## THE STATE v. FRANK HARRIS, Appellant.

Division Two, December 4, 1906.

1. **TESTIMONY: Objection: No Ground.** Objections without any reason assigned why testimony offered is incompetent, amount to no objection at all.

2. **———: ———: After Answer.** A party cannot sit by and allow a question to be answered, and if the answer does not suit then make an objection.

3. **FELONIOUS ASSAULT: Instruction for Common Assault.** Upon the trial of a defendant charged with an assault with intent to kill, an instruction for common assault should not be given if there is no evidence on which to base it. The court is not justified in inviting the jury to convict the defendant of a minor offense of which there is no evidence in the case.

4. **———: ———: No Request.** Where no instruction for common assault, in the trial of a defendant charged with an assault with

intent to kill, was asked by defendant and no exception was saved to the failure of the court to instruct on all the law applicable to the case, the defendant cannot complain that no instruction on common assault was asked, even though there may have been evidence authorizing it.

Appeal from St. Francois Circuit Court.—*Hon. Robt. A. Anthony,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) Most of the evidence was admitted without any objections from defendant. In three instances defendant's counsel objected, but assigned no reason therefor, which is not sufficient. State v. Young, 153 Mo. 449; State v. Westlake, 159 Mo. 679. While the State's attorney was cross-examining the defendant, a question was asked and answered by the defendant without any objection being made. After it was answered by defendant, defendant's attorney made an objection; but did not even then assign his reasons therefor. It has often been decided that a party can not sit by and allow a question to be answered, and, if the answer does not suit him, then make an objection. State v. Rapp, 142 Mo. 449; State v. Marcks, 140 Mo. 656; State v. Sykes, 191 Mo. 79; Thompson on Trials, secs. 715-716. (2) Nearly all of defendant's evidence was admitted by the trial court. But, in five instances, the State objected to certain questions asked by defendant, and the objections were sustained. It is impossible to see how such evidence was relevant, or what possible bearing it could have had on the merits of the case. But even if it was material, defendant's counsel failed to state what he expected to prove by the witness; hence, the point has not been properly saved for review. State v. Hodges, 144 Mo. 50; State v. Martin, 124 Mo. 514. Defendant's counsel asked defendant to state to the jury whether or not he took that pistol

there for the purpose of using it on the prosecuting witness. To this question defendant replied that he did not, and never thought of such a thing. Defendant's counsel then asked the reason that he had for carrying that pistol; to which the State interposed an objection, and the objection was sustained. Without stating what he expected to prove, defendant's counsel saved his exceptions. It is insisted that the record in this respect contains no error for three reasons: First, because no formal offer of proof was made; second, because to allow defendant to prove his reasons therefor would have been foreign to this issue and would have raised one or more collateral issues in the case; and third, because said evidence was immaterial, and its exclusion could not have prejudiced defendant's case. Defendant was allowed to prove that he did not carry said pistol for the purpose of using it on the prosecuting witness, and that he "never thought of such a thing." To have allowed him to go further and prove who had threatened his life, if any one, or that he was afraid of a dog, or other vicious animal, or that he intended to take the pistol to the repair shop, would have injected into the case matters that had no bearing on the issue. It should be remembered that the defendant was not charged with carrying a concealed weapon; but with an assault with intent to kill. If the defendant had shot the prosecuting witness, the crime charged would have been committed, even though the defendant had not carried the pistol in his pocket. Sec. 1863, R. S. 1899; 3 Rice on Evidence, sec. 41; Wharton's Crim. Evid., sec. 24; Com. v. Chote, 105 Mass. 451. (3) No error was committed in failing to instruct on the subject of common assault; nor in failing to fully instruct on all of the law applicable to the case. But, even if the trial court did so err, defendant has waived the same by failing to ask for such an instruction, and by failing to object and save his exceptions at the time. State v. McGinnis, 158 Mo. 124; State v. Albright, 144 Mo. 638.

GANTT, J.—This is a prosecution commenced by the filing of an information by the prosecuting attorney of St. Francois county, in the office of the clerk of the circuit court in vacation, on the 22nd day of September, 1903, wherein he charged the defendant with an assault upon one James Stout, with the intent him, the said Stout, on purpose and of his malice aforethought, feloniously to kill and murder. The information was duly verified, and the defendant was arrested and the cause continued until the second day of August, 1904, at which time the defendant was duly arraigned and entered his plea of not guilty, and he was put upon his trial and convicted and his punishment assessed at five years' imprisonment in the penitentiary of this State.

After unsuccessful motions for a new trial and in arrest of judgment, the defendant was sentenced in accordance with the verdict of the jury. From that verdict and judgment he appeals to this court. Time was granted the defendant within which to file his bill of exceptions, and in obedience to the leave granted, the defendant did on the 29th of December, 1904, file his bill of exceptions.

The evidence on the part of the State tends to prove that the defendant was a barber by occupation and lived in Ironton, and the prosecuting witness, James Stout, lived in Iron Mountain, St. Francois county. For some months prior to the difficulty the relations between the defendant and the prosecuting witness had been unfriendly. The prosecuting witness, it seems, thought that the defendant had been too intimate with the prosecuting witness's wife. It seems that the defendant on one occasion brought Stout's wife home in a buggy, and a considerable difficulty occurred between the defendant and Stout. Afterwards and on Sunday morning, September 20, 1903, the defendant came to the home of Stout in Iron Mountain, in company with Andrew Langley and Fred Stout, a

son of the prosecuting witness. These three brought a case of beer with them, and located themselves in Stout's yard from about eleven o'clock in the forenoon until four or five in the afternoon. During this time they consumed most of the beer. Indeed, the evidence tends to show that they replenished the supply twice during the day. During their stay in the yard of the prosecuting witness, his wife went out on the porch and talked with defendant for a considerable time, took some of his bottles of beer and put them in a tub of ice water, and from time to time she took the beer out to defendant and the others who were with him, and she also invited the defendant to come in and take dinner with them, but the defendant declined this invitation, saying he had money enough to buy his dinner. About noon the defendant sent off to a restaurant and bought some cheese and crackers, which he ate out in the yard. During the day defendant got a chair and a pair of scissors and trimmed the hair of Mr. Langley, his companion. During all this time, the prosecuting witness, Stout, remained in his house, and did not go out to see and did not speak to the defendant. Langley left, and one Frank Postelwaite came up and he was invited by the defendant to drink some of the beer, which he did. The evidence then tends to show that about 4:30 o'clock in the afternoon, Stout, the prosecuting witness, who was still in the house, directed his son, Charley, to go out to the wood pile and bring in some stove wood. The boy replied he did not want to go, and there was no wood cut, thereupon Stout told him to cut some, and ran towards the boy, and on to the porch kicking his son as he jumped off of the porch. Defendant who was still in the yard, looked up, and Stout asked him what he had to say about it, to which defendant replied, "Who are you talking to?" To which Stout answered, "I am talking to you you, G— d— you." Defendant called to Stout not to get his gun, at the same time raising up out of his chair and drawing his revolver.

Stout retreated into the house and shut the door be-
hind him. Defendant opened the door and struck Stout
on the head with something; he could not tell what it
was.  Defendant then fired his pistol at Stout, the ball
taking effect in the left shoulder three inches below the
point of the shoulder and ranging upward. The weapon
used by the defendant was a forty-four calibre Smith
and Wesson pistol.  After wounding Stout, the defend-
ant walked out in the yard, and Stout got his gun and
fired twice at the defendant; the gun was loaded with
squirrel shot, and both loads took effect in the defend-
ant.  The defendant fell, but soon got up and returned
to the room where Stout was, and snapped his pistol at
Stout, but was prevented from firing by Postelwaite.
Defendant was taken to a house near by, and later in
the afternoon returned to his home in Ironton.

On the part of the defendant the evidence tended
to prove that he had never been intimate with Mrs.
Stout, although he had shown her some attention; that
Stout and his wife had had several troubles due to mis-
treatment by the husband, and which resulted in their
being separated two or three times; that because of
some kindness shown the wife by the defendant, Stout
attempted to shoot the defendant, drawing his shot gun
and using threatening language; that on the Sunday
of the difficulty, the defendant went to Iron Mountain to
collect some money from some one there, and also to try
and sell barber supplies to another person; that on the
road he fell in with Andrew Langley and Fred Stout,
and went with them to the yard of Mr. Stout, the pros-
ecuting witness, and remained there from eleven until
four o'clock; that he got a chair and barbered a little
that day, and drank considerable beer, all of the men
on the place, including the prosecuting witness Stout,
joining him in the drinking; that just before the diffi-
culty, defendant saw Stout come out on the porch hold-

199 Sup.—46.

ing his son Charley by the neck and kicked him off of the porch.

Defendant testified that Stout then looked towards him and Postelwaite, who were under a tree in the yard about fifteen feet away, and said: "G— d— you, what have you got to say about it, you G— d— son of a b—." Defendant said to Stout, he would not take that off of anybody, to which Stout replied, "You take that or take worse." At the time of using this language, Stout was standing towards the door, and Postelwaite said, "He is going to get his gun." Whereupon defendant got up out of his chair and says, "No he won't; I will stop him. Jim, don't get that gun you drew on me once. If you get it, you will have to use it." Stout was then hurrying towards the room where the gun was usually kept and said, "I will use it this time." Defendant followed Stout into the room, grabbed hold of him by the shoulder and struck him with his fist. When Stout got hold of his shot gun defendant fired his pistol and shot Stout in the shoulder. Defendant then turned and walked out into the yard, when Stout fired twice at him, both loads taking effect and knocking defendant to the ground. Defendant then got up and returned to the house, but did not snap his pistol nor try to shoot any more. Postelwaite took hold of defendant and assisted him over to a neighbor's house. James Smith testified that he took defendant home in a wagon after the shooting and examined his pistol; that it was a forty-four calibre and had but one empty shell and nothing to indicate that it had been snapped or any other cartridge. Defendant also proved by William Spaugh that Stout went to Ironton a month before and exhibited a pistol and said he was looking for defendant. The defendant also introduced in evidence the record showing that the State's witness, Frank Postelwaite, had been twice convicted of an assault with intent to rob. On one conviction he was sentenced to pay a fine, and by another to the penitentiary.

The court then instructed the jury on felonious assault with malice aforethought, and defined the words, "On purpose, malice aforethought," as they have been defined in instructions approved by this court. It also instructed the jury on assault with intent to kill without malice aforethought, and gave the usual instructions as to the credibility of witnesses, presumption of innocence and reasonable doubt, and an instruction on the law of self-defense, and the consideration which they should give to the evidence of threats communicated or uncommunicated. As these instructions are not challenged in this court and as we have examined them and find that they are in all respects correct and fully cover all the points of law arising in the case, we deem it unnecessary to burden this opinion with their reproduction.

I. The information in the case is sufficient in form and substance, and has received the expressed approval of this court in State v. Elvins, 101 Mo. 243.

Very few objections were made by the defendant to the evidence introduced on the part of the State, and in these instances no reason was assigned why the testimony was incompetent. In a word, there was a simple objection without stating any grounds therefor, which we have often ruled is insufficient. [State v. Young, 153 Mo. l. c. 449; State v. Westlake, 159 Mo. l. c. 679.] In one other instance the question was asked and answered by by the defendant on his cross-examination, without any objection being made by his counsel; afterwards defendant's attorney objected to it, but assigned no reason for his objection, and no motion was made to strike out the answer. It has often been ruled that a party cannot sit by and allow a question to be answered and if the answer does not suit him, then to make an objection. [State v. Marcks, 140 Mo. 656; State v. Rapp, 142 Mo. l. c. 449; State v. Sykes, 191 Mo. l. c. 79, 80.] The defendant's evidence was practically all admitted, but in several instances counsel for the State objected

to certain questions asked by defendant and the objections were sustained. An examination of these questions in connection with the testimony, demonstrates that the ruling of the court in each instance was so clearly right that it needs neither argument nor authority to sustain his action. Indeed, it may be said that the issue was so simple that not only were very few exceptions taken on the subject of admission or exclusion of evidence, but those that were, were without substantial merit and such as in no event would justify the reversal of the judgment.

II. We have already said that the instructions given by the court were proper and such as have often been approved. But the point was made in the motion for new trial that the court erred in failing to instruct on common assault. No such instruction was asked by the defendant and no exceptions taken to the failure of the court to instruct on all the law applicable to the case. But even if an instruction had been asked for common assault there was no evidence on which to base it and the court would not have been justified in inviting the jury to find the defendant guilty of a minor offense of which there was no evidence in the case.

III. There was ample evidence to sustain the verdict of the jury, and where this is the case, this court on appeal has no authority to and will not interfere with the verdict of the jury. Discovering no error in the record, the judgment of the circuit court is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.