JAMES A. HOYE, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. When, from the nature of the case, the defense set up as an excuse for the killing, was that it was justifiable homicide in self-defense, it was not error in the Court to give in charge section 4267 of the Revised Code as the law applicable to the case.

2. Previous threats by the deceased that he would take the life of the accused if he did not pay him some money he owed him, which were not communicated to the slayer before the fatal deed, are not admissible in evidence in justification of the killing in self-defense, and a new trial will not be granted to let in newly discovered evidence of such threats.

3. A new trial will not be granted for newly discovered evidence, which is only cumulative, or intended to impeach a witness, or when it would not, if heard on the trial, probably have produced a different result.

4. Jurors will not be heard to impeach their own verdict.

5. It is the imperative duty of the Judge of the Superior Courts to hold the Courts at the regular times fixed by law, and he has no right to adjourn any of said Courts from the regular term to some other time, by order in vacation, unless it is in the language of the statute, "not possible for *him to attend* the regular term of said Court, from sickness of himself or family, or other unavoidable cause." And in case the Judge, by order in vacation, adjourns over the regular term of the Court to any other time, for any other cause than those expressed by the statute, no party litigant can be compelled to try his case before the Judge at such irregular term. But if the parties in a civil case go to trial without objection, they will not afterward be heard to set up the irregularity.

6. A defendant who is charged with a crime involving his life or liberty, is not held to have waived anything, unless he does it by express agreement for the purposes of the trial.  If the term of the Court has been illegally adjourned and a party at such adjourned term is convicted of murder or manslaughter, he is not bound by the proceedings, and is entitled to a new trial, on motion.

Murder.    Arrest of judgment.    Adjournment of Courts. Before Judge COLE.    Bibb Superior Court.    May adjourned Term, 1869.

Hoye was charged with having murdered Aaron Moore, on the 10th of January, 1869, in said county.    That Hoye did the killing was shown.    The mortal wound was by a pistol ball, under the shoulder-blade.    Moore was dunning him for a blacksmith's bill.

DICK BAILEY, a negro, testified that when Moore said people would not pay him for his work, Hoye told his son, James Hoye, to hand him his pistol; Moore ran and Hoye shot him while he ran.    After shooting him, Hoye shot at him again.    Moore was unarmed.    Witness was expressing his sorrow for Moore, saying he was shot, when Hoye said, " how do you know he is shot, and that I did it?"    Witness said, "because he threw his hands up to his back when the pistol fired."    Hoye replied, "you are evidence, then I will kill you," and cursing witness, shot him in the head.    Hoye ran home.    Several questions were asked this witness as to whether he had not told one Howard, that he knew but little of the matter, and that he was shot by accident and, afterwards drank with Hoye, with a view to impeach him.    He denied saying so.    Besides himself, the two Hoyes, and deceased, witness said one Gates and one Dent were present at the shooting.

RACHEL DENNIS testified, that hearing the shooting she looked out, saw Moore running, and "smoke following him," that he came to her house, said he was shot, and soon died.

For the defense, the evidence was as follows: JAMES HOYE testified, that Moore and his father were at a grocery, Moore dunned his father, and his father said he then had no money, but told him to allow him a credit claimed by him, and that

he would pay him the balance soon ; Hoye went out, Moore followed him and again dunned him ; Hoye again promised to pay him soon, and went back into the grocery ; Moore followed him and continued to talk about the account ; Hoye told Moore to go off and say no more. James Hoye also told Moore to go off, telling him that he would get hurt. Moore then said to Hoye, "G—d d—n you, I will kill you," putting his hand into his bosom. Knowing Hoye was unarmed, witness jumped between them, as Moore seemed to be about to draw a weapon ; Moore turned somewhat from witness ; Hoye jerked witness' pistol from his belt and shot Moore ; Hoye was trying to shoot the second time, when witness threw up his hand and caused Hoye accidentally to shoot Bailey. Bailey admitted this shot was accidental, drank with the Hoyes, and went home with them.

It was shown, that Hoye was hidden to avoid arrest for several days, but that this was done under advice of counsel to wait till bail could be had, and that as soon as that was arranged for, he surrendered himself.

HOWARD testified, that Bailey did say to him what Bailey had denied, as aforesaid, that Bailey did not seemed disposed to talk to him about the matter, and said he did not know how Hoye came to shoot him, Bailey.

The charge of the Court was not in the record. It was conceded, however, that he charged as complained of in the motion for new trial, and in his remarks as to overruling the motion, he said that he charged the jury in the language of this Court, in *Hinch vs. The State,* 25th *Georgia Report,* 299, as nearly as he could. The jury found Hoye guilty of voluntary manslaughter.

The motion for a new trial was upon the following grounds : 1st. That the Court erred in charging the jury in relation to the 15th section of the 4th division of the Penal Code, and in applying said section to the case as made by the testimony, inasmuch as said section refers to an entirely different class of cases from those contemplated by the 12th section of said division, upon which the accused predicated his defense. 2nd. Because of the discovery, since the trial, that on the 9th

day of January, 1869, Moore told one Edwards, that if Hoye did not pay him some money, due him for blacksmith's work, he would kill Hoye, and that about two weeks after the killing, Dick Bailey told said Edwards, that when Hoye and Moore were quarrelling, young James Hoye, jumped between the parties, took hold of Moore and turned him around a little, and thus caused the shot to hit Moore's shoulder.  3d. That the verdict was contrary to law and the evidence ; and 4th. That after the jury had retired to consider of their verdict, they discussed the conduct and character of Hoye before the killing, though his character had not been put in issue.

There are two other grounds in this motion, but one of them was abandoned here, and the Judge denied the statements of facts therein set forth.  The 2d ground was supported by affidavits of the statements having been made, and of Hoye and his counsel, that they were ignorant of the facts till after the verdict.  The 4th ground was supported by affidavits of several of the jurors, stating that before making the verdict the jury did discuss Hoye's character and conduct before the killing, saying he was a bad and desperate man. The motion for a new trial was overruled.

There was also a motion in arrest of judgment, upon the ground that the Court was sitting illegally at the time of the conviction.  This was based upon these facts :  The regular term of the Court was to begin on the third Monday in May. In vacation the Judge ordered it adjourned till the fourth Monday, in May, stating in his order, as reasons for the adjournment, that several members of the bar could not attend on the third Monday, and that he had been appointed to attend the Commercial Convention in Memphis, which was to be held during the week, beginning with said third Monday.  This motion was also overruled, and Hoye was sentenced to the penitentiary for ten years.  Error is assigned upon the refusal to arrest the judgment, and upon each of the grounds in the motion for new trial.

JOHN B. WEEMS, JOHN RUTHERFORD, for plaintiff in error.

E. W. CROCKER, Solicitor General, by S. HUNTER, for defendant.

BROWN, C. J.

1. The excuse set up by the defendant's witness in this case, to justify the killing, was that the deceased, during the quarrel, cursed prisoner, threatened to kill him and put his hand in his bosom, when prisoner took witness' pistol from his person and shot deceased. Under this state of facts the Judge gave in charge to the jury section 4267 of the Revised Code, which relates to the killing of another in self-defense, as the law applicable to the case, and this is assigned as error. And it is insisted that the Judge should have given in charge section 4264, which relates to justifiable homicide in defence of habitation, person or property, against one who manifestly intends, or endeavors, by violence or surprise, to commit a felony on either. We think the evidence in the case justified the charge as given, though it might have been better, out of abundant caution, for the Judge to have given both sections in charge to the jury, and left them to apply the evidence.

2. The new trial was also asked, in this case, on the ground of the newly discovered evidence of Edwards, who swears that deceased told him, the day before the killing, that if Hoye, the prisoner, did not pay him some money which he owed him, he intended to kill him. It is not pretended that this threat was communicated to Hoye before the fatal shot was fired. It could not, therefore, have influenced his conduct, and is not admissible in evidence in justification of the killing. We are aware that such evidence was admitted in *Keener's case in* 18th *Georgia,* 194, not by way of justification, but merely to show the state of mind or feeling on the part of the deceased. But that ruling does not seem to have been followed in subsequent decisions. *See* 25th *Georgia,* 207, *and* 29th *Georgia,* 470. While we do not overrule that decision, we hold that it is not applicable to this case. We do not see what the state of mind of the deceased had to do with the case, as the deceased was unarmed, and made no

effort to hurt the prisoner further than to make threats, and put his hand in his bosom, where he had no weapon. We are, therefore, of the opinion that the evidence of previous threats, not communicated to the prisoner before the killing, would not have been admissible, and that the Court did not err in refusing a new trial on this ground.

3. Nor will a new trial be granted on the ground of newly discovered evidence which is only cumulative, or intended to impeach the character of a witness examined on the trial, or when the evidence, if it had been before the jury on the trial, would not probably have changed the result.

4. The motion for a new trial was also predicated upon the affidavits of certain jurors who tried the case, to the effect that the character and conduct of the defendant, previous to the killing, was spoken of in the jury-room during their deliberations, which, it is insisted, was not justified by any evidence before the jury. We think the Court did right to overrule the motion, on this ground, also, as the jurors were not competent to impeach their verdict, 28 *Ga.*, 78; 30 *Ga.*, 869.

5. But we now approach a much more difficult question. Was the Court legally and regularly held, and if not, did the defendant waive his objection to the irregularity by going to trial without making the objection? We have considered this question carefully, with a strong disposition to sustain the verdict, to which we find no other good objection. But we are unable to do so. The Constitution and Statutes of the State fix the time when the regular terms of the Superior Courts shall be held. Sections 3175 and 3176 of the Revised Code lay down the rules distinctly under which the regular terms of the Court may be adjourned by the Clerk, on failure of the Judge to attend, and by order of the Judge in vacation, when it is "not possible for *him to attend* the regular term of said Court from sickness of himself or his family, or other unavoidable cause." And section 3177 declares that "no Superior Court shall be adjourned by the Judge in vacation except for the cause above stated." This does not interfere with the right of the Judge, in term time, to adjourn

the Court to such time as he may think fit, nor to hold adjourned terms, in his discretion, "to close the dockets," when the business requires it, or to hold "special terms" to try criminal cases. But it does distinctly and unequivocally forbid the Judge to adjourn over the *regular term* by order in vacation for any other cause than sickness of himself or family, or other *unavoidable* cause.

The practice which had grown up in some circuits of adjourning the regular terms of the Courts, at the mere convenience or caprice of the Judge, to the great detriment of parties and inconvenience of jurors and witnesses, was a great evil and demanded the emphatic mandate of the Legislature which is now found in the Code.

It is not pretended that the Superior Court of Bibb county was adjourned for either the sickness of the Judge or of his family, or for any other *unavoidable cause*, which rendered it impossible for him to attend at the regular term. The order recites that certain members of the bar could not attend at the time fixed for the regular term and that the Judge desired to go to the Commercial Convention. This was no legal excuse. If half the attorneys in the circuit should be absent, it is the duty of the Judge to attend at the regular time fixed by law. He can then make such adjournments, or grant such continuances of causes as he may think proper, or as the facts of each case may justify. When the Judge, without any sufficient legal cause, has adjourned the regular term of the Court, by order in vacation, we hold that he has no power at such adjourned term to compel any party to go to trial before him. If, however, parties to civil causes make no objection and go to trial, we hold that the irregularity is waived, and that they cannot afterwards be heard to object to the judgment, on the ground of the illegal act of the Judge in ordering the adjournment.

6. But the rule is different in a criminal case involving the life or liberty of the defendant. He waives nothing by implication or intendment. And unless he expressly waives an objection to the legality of the adjournment, with a view to a trial which is to bind him, we hold that he may take advan-

ATLANTA, DECEMBER TERM, 1869.    725

tage of it even after verdict.   The State in such case is bound to make his guilt *legally* appear beyond a reasonable doubt before he can be subjected to the penalty which must follow the conviction.

As the Court, illegally adjourned as this was, had no right to try the defendant without his express consent to go to trial and take the consequences, (which consent should have been in writing upon the bill of indictment,) he has not been put in jeopardy, and we set aside the verdict, on that ground alone, and send the case back with instruction that a new trial be had.

Judgment reversed.