THE STATE v. TERRY, Appellant.

Division Two, March 5, 1907.

1. **ASSIGNING COUNSEL TO DEFENDANT: Requisites: Ability to Employ.** It does not become the duty of the trial court to assign counsel to a defendant until the court has found, first, that he is without counsel; second, that he is unable to employ counsel; and, third, that he has requested that counsel be assigned to him. And where the court finds that defendant is able to employ counsel, it is not its duty to assign counsel to him, even though he requests it.

2. ————: **Failure to Request: Waiver.** The failure of a defendant to request the court to assign counsel to him is a waiver of this statutory right.

3. **FELONIOUS ASSAULT: Sufficiency of Evidence.** Evidence held sufficient to support the verdict finding defendant guilty of felonious assault.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

BURGESS, J.—Upon an information filed by the prosecutiong attorney of Christian county, the defendant was, at the February term, 1906, of the circuit court of said county, convicted of a felonious assault upon one William Bilyeu, and his punishment fixed at two years in the penitentiary. After filing motions for a new trial and in arrest of judgment, which were overruled, defendant appealed.

The State's evidence tended to prove that bad feeling had been existing between the defendant and the prosecuting witness, William Bilyeu, due to the fact that Bilyeu and others had been using a road or passway said to have been across a portion of defendant's land. Some of the witnesses claimed that this was a public road, and others thought that the same was on defendant's ground, but all admitted that the ground and roadway were uninclosed and used by the public as a passway. Some days prior to the date of the commission of the alleged offense, the defendant stated to one Proctor that he wanted Bilyeu to keep off of his, defendant's, premises, and that if he didn't he would cut his liver out. To one Spradley, the defendant stated that if he ever caught Bilyeu down there again he "aimed to paralyze him;" this was some two weeks before the difficulty. The State's evidence tended to prove that Bilyeu, on Sunday morning, April 9, 1905, was going to church and passing along this road on horseback. He met defendant walking towards him, in company with a woman whom he afterwards recognized as defendant's first wife. When only a short distance from Bilyeu, the defendant threw two rocks at him; the first rock missed him, and the second rock struck Bilyeu on the hand. Defendant then ran up with a knife in his hand and cut Bilyeu on the arm and hand. Bilyeu was holding his bridle reins in his hand and the bridle reins and gloves, which were offered in evidence, were also cut in one or two places. Defendant, after strik-

ing Bilyeu five times and cutting him three times, followed him about one hundred yards and used abusive and profane language. As a result of this cutting, Bilyeu was confined to his house some two weeks. Bilyeu was positive that he said nothing to defendant at the time of and just prior to the assault and made no efforts to throw rocks at defendant or to ride his horse over defendant, nor threaten to kill defendant. Bilyeu also testified that defendant had never ordered him to keep off of that roadway, nor sent him word by anyone to that effect. Shortly after this difficulty, defendant met James Bilyeu near Bull Creek, and told him of a fight he had had with William Bilyeu, and asked the witness to go up and see if William was badly hurt. Defendant stated that he had cut him on the arms and stomach and that at the time of the cutting William Bilyeu was on his horse. To Marion Clevinger defendant stated that he guessed he had cut one, and if there had been two or more, he would have been whittling yet. Defendant exhibited his knife and went over to the grindstone to sharpen it some. In further speaking of the difficulty, defendant said that he had let his knife into him and showed the distance on the knife blade that it stuck in Bilyeu. He further said Bilyeu was on horseback during the difficulty. Defendant made no complaint to this witness of any bruises or scratches on his body. To the witness William Dye, defendant said that he had just had a little racket or scrap, and if he had had a gun he would have killed two more.

The defendant's evidence tended to show that he met Bilyeu on the roadway which crosses defendant's land, and that defendant was walking in company with his first wife, who was then going to defendant's house to wait on his children. The evidence further tended to show that defendant's present wife was concealed close by and was watching; that Bilyeu threw rocks at defendant and threatened defendant; that one of the

rocks struck defendant on the arm, bruising it considerably; that Bilyeu at first tried to ride his horse over defendant, and then got off his horse when defendant struck him. Defendant admitted striking Bilyeu with a rock and also cutting him two or three times with his knife, but said it was an ordinary pocket knife and that he was whittling with it when he met Bilyeu. Defendant's evidence further tended to show that Bilyeu had endeavored to get defendant's present wife to leave him; had said many ugly things in regard to defendant, and that defendant had notified him never to use that passway or roadway again. In response to such notice, the defendant's evidence further tended to show that Bilyeu said that he intended to use that passway as long as he was there, and that defendant did not look bad or scary to him. The defendant also introduced evidence tending to show that, prior to this difficulty, he enjoyed a good reputation as a peaceable man.

In rebuttal, the State proved that defendant's first wife, who was a witness for defendant, stated to Mrs. Anderson that she was not noticing the defendant at the time the difficulty commenced between him and Bilyeu; that she was talking to someone else and did not know how the fight started. Bilyeu also denied making any threats against the defendant, or making any effort to induce his second wife to leave him.

Defendant is not represented in this court; but in the motion for a new trial several grounds are assigned therefor, but only such as seem meritorious will be noticed. The first of these is the action of the court in requiring the defendant to plead to the information and to be placed on trial without first having appointed some attorney at law to represent him in the trial of the cause.

Section 2560, Revised Statutes 1899, provides: "If any person about to be arraigned upon an indictment for a felony be without counsel to conduct his de-

fense, and be unable to employ any, it shall be the duty of the court to assign him counsel, at his request, not exceeding two, who shall have free access to the prisoner at all reasonable hours."

It will be noticed from this statute that three things are necessary to be found by the trial court before appointing or assigning counsel for a defendant charged with felony: first, that the defendant is without counsel; second, that he is unable to employ counsel; third, that the defendant has requested that counsel be appointed for him. This record does not show that defendant requested the court to appoint counsel for him, but it does disclose that the court found that he was able to employ counsel. Defendant being able to employ counsel, it was not the duty of the court to appoint counsel for him, even though he had requested it. Besides, his failure to make such a request was a waiver of this statutory right. In the case of State v. DeSerrant, 33 La. Ann. 979, it was held, under a statute which provides that "Every person shall be allowed to make his full defense by counsel learned in the law, and the court before whom he shall be tried shall immediately, on his request, assign to him such counsel as he shall desire," that as it did not appear that any request was made by the accused of the court for the appointment of counsel to defend him, the court was not required to make the appointment. "If he fails to request the appointment of counsel, he cannot afterwards complain of being unrepresented." [Wharton's Crim. Pl. and Pr., (9 Ed.), sec. 558.]

An attorney appointed by the court to defend a person charged by indictment or information with a felony renders his services without any compensation therefor, and it is only when the defendant is unable to employ counsel, and makes the necessary request, that it becomes the duty of the court to assign him counsel. It would manifestly be an injustice to require an attor-

ney to defend without compensation a person under indictment or information for felony, when such person is able to employ counsel, or to force counsel upon the defendant without his consent. Occasionally the accused prefers to conduct his own defense rather than employ counsel or have the court employ counsel for him.

The instructions seem to cover every phase of the case, and appear very fair to the defendant; nor did the court commit error in failing to instruct upon any lower offense than the one charged, because there was no evidence upon which to predicate such an instruction. [State v. Harris, 199 Mo. 716.]

The verdict was well warranted by the evidence, and, finding no reversible error in the record, the judgment is affirmed.

All concur.