ELAM *v.* ROWLAND, warden.

No. 14102. MAY 27, 1942.

*Hoyt H. Whelchel·* and *W.· A. Covington,* for plaintiff.
*George R. Lilly, solicitor-general,* and *Claude Shaw,* for defendant.

REID, Chief Justice. 1. Lige Elam filed in the superior court of Colquitt County, in 1939, his pleas of guilty, of two offenses with which he stood charged, shooting at another and carrying concealed weapons. He was sentenced to serve four years in the penitentiary for the one, and one year for the other. In December, 1941, while he was serving the sentences so imposed, counsel in his behalf presented to Judge Moore, of the city court of Colquitt County, a petition for the writ of habeas corpus, making the contention that his sentence was void, because in making and entering his pleas of guilty he had been deprived of the benefit of counsel as guaranteed him by the terms of the State constitution. Code, § 2-105. The warden having custody of the prisoner filed his response to the petition, and denied that he had been deprived

of such right, contending that at the time of his arraignment and when his case was called for trial he had .been fully apprised of his right to counsel, and setting out that he had expressly waived the same. Judge Moore denied the petition, and remanded the petitioner to custody.

The only evidence came from the petitioner Elam, and from the solicitor-general who had represented the State in the prosecution of the cases. Elam testified "There was no trial; but I pleaded guilty to these charges when I was brought before the court. I had no lawyer to represent me. The reason I had no lawyer was that I had no money to pay a lawyer, and I did not know that I could have had one without paying him a fee. I may have been asked if I wanted one; but if so, I thought still I would have to pay him. I am positive that I at no time was told that the court would appoint me one who would represent me without my paying him. . . I only went through the fourth grade in school. I can read a little. . ." The solicitor-general stated that when his cases were called he "asked the defendant if he wanted a lawyer to be appointed to represent him, and he said he did not. . . I do not say that I informed him in so many words that it was one of his rights to have a competent counsel appointed for him by the court free in case he was unable to hire such service."

In *Martin* v. *State,* 51 *Ga.* 567, 568, it was said: "The constitutional guaranty that 'every person charged with an offense against the law shall have the privilege and benefit of counsel' should be strictly guarded and preserved. So deeply grafted in our practice has this great right become that none are so low or so poor but that they may rely upon it. If it be so that they are unable to retain counsel, the courts will appoint counsel for them, without charge to the defendant. The same duties and responsibilities rest upon counsel thus appointed as if they received the fullest pecuniary compensation." See also *Delk* v. *State,* 99 *Ga.* 667 (26 S. E. 752) ; *Simmons* v. *State,* 116 *Ga.* 583 (42 S. E. 779). In *Harris* v. *Norris,* 188 *Ga.* 610, 614 (4 S. E. 2d, 840) we dealt with the claim of a prisoner that he had not been accorded the benefit of counsel at his commitment hearing, and, after dealing with the general rule on the subject and referring to instances of its application, stated: "Accordingly, it has been the common and established practice for the trial judge to inquire of a defendant if he

has employed counsel, or if he is able to do so, and, if not, whether he desires the court to appoint one for him, thus giving him the full protection of the constitutional guaranty." While in that case we held that the guaranty could "have no strict application to a commitment hearing," and while in some jurisdictions it is held "that the accused is entitled to counsel for defense purpose only, and is not entitled to advice of counsel as to whether he should plead guilty" (14 Am. Jur. 883, § 167), the better view is that on the important question of a possible sentence to penal servitude the right should not only be recognized, but, as stated above, strictly guarded. We have also held that deprivation of the right may be asserted, in a proper case, by seeking the writ of habeas corpus. *Wilcoxon* v. *Aldredge,* 192 *Ga.* 634 (15 S. E. 2d, 873).

But the right may be waived. Although in *Martin* v. *State,* supra, it was ruled that the accused does "not lose this privilege unless by a clear and 'distinct waiver thereof," it was held in *Sarah* v. *State,* 28 *Ga.* 576 (2) : "As the prisoner may waive even a trial itself, and be capitally punished upon his own confession of guilt, he may waive every minor right or privilege. The greater includes the less, or the whole the parts." In *Stokes* v. *State,* 73 *Ga.* 816, it was held: "Where the court asked the defendants in a criminal case if they wished counsel, offering to furnish such counsel, which they declined, and none was appointed, there was no violation of the constitutional right to have the benefit of counsel and to defend in person or by counsel, or both." On the question of waiver of such rights, see *Durham* v. *State,* 70 *Ga.* 264 (4) ; *Hoye* v. *State,* 39 *Ga.* 718; Frank *v.* Mangum, 237 U. S. 309 (35 Sup. Ct. 582, 59 L. ed. 969), especially discussion at p. 343. In *Gatlin* v. *State,* 17 *Ga. App.* 406 (87 S. E. 151), it was ruled: "It is a constitutional right of a defendant in a criminal case to have the benefit of counsel (Civil Code, § 6361) ; but he can waive this right. If the record shows that the accused did not have counsel, it is not cause for a new trial, unless it further appears that the right to have counsel was denied him. Barnes *v.* Commonwealth, 92 Va. 794 (5), 803 (23 S. E. 784) ; Edwards *v.* State, 45 N. J. Law, 419 ; Sahlinger *v.* People, 102 Ill. 243; State *v.* Raney, 63 N. J. L. 363 (43 Atl. 677) ; State *v.* Terry, 201 Mo. 697 (100 S. W. 432)." It was further said: "The right and privilege of one accused of

crime to be defended by counsel is not denied by a mere failure of the court to assign counsel, when it does not appear that counsel is wanted. If the accused has means to employ counsel and is out upon bond, and has opportunity to secure counsel, and neglects or refuses to do so, the court is under no obligation or duty to appoint counsel to represent him. Where the defendant, as in this case, in answer to a query from the court, states that he has no counsel, and in answer to another question from the court replies that he is ready for trial, and makes no request for counsel to be appointed to defend him, but, on the contrary, actively enters into the case as his own lawyer, agreeing upon a jury, cross-examining witnesses, and making his own statement to the jury, he waives his right to be represented by counsel. While the better practice for the court, on ascertaining that the accused has no counsel, is to ask him if he is able to employ counsel, and if he desires the benefit of counsel, and to acquaint him with his constitutional right in this respect, yet, under the particular facts of this case, and in the absence of any constitutional provision or statute requiring the court to do so, the omission of the court in this respect is not cause for a new trial."

In the instant case, the judge by his denial of the petition evidently found that the prisoner had waived his right to counsel, by his statement that he did not wish one appointed for him. We hold the view that the judge was authorized in so finding. Not being compelled by the showing made to hold otherwise, he doubtless had in mind the solicitude almost always shown by the trial judges and by the legal profession for the protection of indigent persons accused of crime. In *Delk* v. *State,* supra, Atkinson, J., referring to the prevailing practice as touching this guaranty, said: "This is a privilege which belongs to every citizen of this State, without the slightest reference to his condition in life, and can not be legally denied him by the courts. The law in its humanity recognizes this right and privilege, and the legal profession, be it said to its credit, has never, so far as we are informed, in any case, in any court, in this State permitted any man, however humble and helpless he may have been, to be put upon trial for the commission of any offense without providing for him means of enjoying this privilege. The most indigent of criminals, under the benign system which prevails in this State, have on many occasions been fur-

nished with the ablest and most learned of lawyers to represent them before the courts, without fee or reward or the hope thereof. Our courts have uniformly adopted the practice of assigning counsel to represent indigent criminals in all cases when they were unable to employ counsel to represent them. Even pleas of guilty have been rarely accepted until counsel assigned to the defense of such criminals have looked into the merits of the cause and recommended their acceptance by the court." So, if any doubt is raised in the record, after the lapse of several years, as to the fullness of assurance given to the defendant by the court, the presumption that the judge, when the pleas were accepted and the sentences were imposed, took necessary steps for his protection (*Delk* v. *State,* supra) is of some aid.

*Judgment affirmed. All the Justices concur.*