**STATE of Missouri, Respondent,**

v.

**Ellis Elsworth RICKARD, Appellant.**

No. 49272.

Supreme Court of Missouri,

Division No. 1.

Feb. 11, 1963.

R. M. Gifford, Green City, for appellant. Thomas F. Eagleton, Atty. Gen., Phillip C. Houx, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Commissioner.

Defendant was found guilty of the offense of driving a motor vehicle while in an intoxicated condition and his punishment was fixed by the jury at two years' imprisonment in the penitentiary. See §§ 564.440 and 564.460 (all statutory references are to RSMo 1959, V.A.M.S.). On December 13, 1961, his motion for a new trial was overruled and he was duly sentenced. Thereafter, on the same day, defendant filed a motion to vacate the judgment under the provisions of S.C. Rule 27.-26, V.A.M.R., and said motion was, on that day, considered and overruled. Defendant filed a notice of appeal in which he appealed "from the judgment of the court entered in said cause on the 13th day of December, 1961." It is apparent from his brief that defendant intended to appeal from both of the judgments entered on that day. For

the purposes of this opinion we will assume (but do not decide) that the notice of appeal was sufficient to constitute an appeal from both judgments. The points raised upon this appeal are such that a brief statement of facts will suffice.

For several hours prior to his arrest defendant was at a tavern in Millard, a small town located on U. S. Highway 63, a few miles south of Kirksville, Missouri. At about 1:30 a. m. on June 12, 1961, defendant left the tavern and drove his automobile northwardly on Highway 63. A short time later he passed a highway patrol car parked by the side of the highway. The trooper followed defendant's car for a short distance and observed that it was twice driven onto the right shoulder and then back across the highway to the left of the center line thereof. The trooper stopped defendant's vehicle and placed defendant under arrest. He testified that defendant "had some difficulty in walking back to the patrol car, in that he stumbled around somewhat,—weaved. Nearly fell down at one time, and was able to control himself by putting his left hand upon the rear fender of his car," and that he talked in a "slurred-type manner," much different than his manner of speech as noted on later occasions. Other witnesses who saw defendant shortly thereafter testified (as did the trooper) that his breath smelled strongly of intoxicants and that he had difficulty in keeping his balance.

When defendant appeared in circuit court for arraignment on September 6, 1961, without counsel, the following occurred: "The court informed the defendant of the right to counsel and explained wherein the exercise of said right might be of benefit to defendant. The court offers to appoint counsel. Whereupon defendant says he has money to employ an attorney but does not want an attorney. * * * [A]nd defendant is formally arraigned and enters a plea of not guilty." On November 6, 1961, defendant appeared for trial and the following proceedings appear in the transcript: "The Court (to the defendant):

Mr. Rickard, do you have an attorney? The Defendant: No, I don't have. The Court: You don't have an attorney. Do you have money to employ an attorney? Do you want an attorney? The Defendant: Well, I'm not ready to go to trial. The Court: Well, we are going to trial. If you want an attorney, I will appoint one for you. * * * The Court: You say you don't have an attorney and you don't have money to employ an attorney, is that right? The Defendant: Well, yes, I actually have the money to employ an attorney. The Court: Well, why didn't you have an attorney then? The Defendant: Well, I don't really think that I need one in this case. The Court: Well, I'll appoint an attorney for you if you want one. The Defendant: Well, really, I would like to have the case continued until we get the—The Court (interrupting): I'm not talking about that. I'm talking about a lawyer. Do you want me to appoint an attorney for you? The Defendant: No, I don't believe I do, your Honor."

Defendant proceeded to represent himself in the trial of the case. For reasons that will hereinafter appear we will briefly discuss the manner in which he conducted his defense. He made a concise suitable opening statement, cross-examined two of the four witnesses offered by the State, called and examined 14 witnesses in his own behalf, made a number of objections to certain testimony, and made an argument to the jury. It is apparent from the transcript that defendant has an adequate vocabulary and has considerable ability (for a layman) in phrasing questions. Some of his witnesses gave testimony which tended to prove that defendant was not intoxicated a short time before he left the tavern. In two instances, however, he made tactical errors of judgment in calling witnesses from whom testimony was elicited on cross-examination which was very damaging to defendant. Also, the cross-examination of a character witness offered by defendant tended to indicate that he may have been convicted of several prior

offenses in other states. If such is true it may account for the fact that defendant failed to testify in his own defense. Although defendant's age does not appear, it is reasonable to conclude from the testimony that he was mature.

After the trial was concluded defendant employed an attorney who prepared and filed a motion for new trial. On the day said motion was overruled and defendant was sentenced, defendant, as heretofore indicated, filed a motion to vacate the judgment under S.C. Rule 27.26, V.A.M.R., which was based upon the following allegations: "II. That the failure of the trial court to appoint counsel for the defendant resulted in a denial of due process of law and violative of Amendment XIV to the United States Constitution. III. That the defendant was incapable of comprehending the nature of the charge made against him, was wholly unfamiliar with courtroom procedure, and was therefore incompetent either to waive his right to counsel or to present his own defense." Said motion was overruled on the day it was filed.

Upon this appeal it is contended that the court should have granted defendant a new trial because the trial proceedings, known to the court, showed that he lacked the capacity to present a defense to the charge. In support of that contention defendant has cited Edwards v. Nash, Mo.App., 303 S.W.2d 211, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 461, and Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647. In this connection we think it is apropos to observe that no layman would likely be able to defend a criminal case with the same degree of skill that is possessed by a lawyer who has spent years in study and experience in order to prepare himself for that type of endeavor. If due process requires that a defendant be skillfully defended, then, for all practical purposes, a trial court would be required to force appointed counsel upon every unrepresented defendant, even though he may have stated that he did not desire an attorney. That such is not required by the Fourteenth Amendment to the Constitution of the United States is apparent from the fact that it has long been the established rule that a defendant, under appropriate circumstances, may waive his right to be represented by counsel

■ The cases above cited all involve defendants who did not have the money to employ counsel or did not know of their right to have counsel. The case before us involves an entirely different situation. In this case the defendant advised the court on two occasions that he had funds to employ an attorney but did not want one. The court nevertheless offered to appoint counsel, which offer was rejected by defendant. That was more than was required by § 545.820, which provides: "If any person about to be arraigned upon an indictment for a felony be without counsel to conduct his defense, and be unable to employ any, it shall be the duty of the court to assign him counsel, at his request, * * *."

The facts and circumstances in the case at bar are very similar to those appearing in State v. Weston, Mo.Sup., 202 S.W.2d 50, 52, wherein this court, in disposing of a similar contention, stated that "Certainly, in these circumstances, it cannot be said that the appellant was unjustly deprived of his right to counsel, that he was not apprised of his rights in every respect or that his rights, constitutional or otherwise, were infringed in any manner. Under the Williams [Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398] and Tomkins [Tompkins v. Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407] cases there is no duty upon the court to appoint counsel for one able to employ a lawyer of his own choosing. Mo. R.S.A. § 4003; State v. Medley, 353 Mo. 925, 185 S.W.2d 633; Mackey v. Kaiser, Mo.Sup., 187 S.W.2d 198. The mere fact that the appellant represented himself, though clumsily, does not deprive him of due process. Const. Mo., Art. I, Sec. 18, Mo. R.S.A.; Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. Nor does it

necessarily mean that he did not have a fair and impartial trial. State v. Terry, 201 Mo. 697, 100 S.W. 432; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. Upon this record the appellant's assignments of error in these respects are not well taken."

■ In this case the only possible circumstance under which it might be said that defendant was not accorded his constitutional right to counsel would be in the event it appeared that by reason of age, ignorance, or mental incapacity defendant was not competent to make an intelligent decision as to his need for counsel. But such is not the case here. This defendant was at liberty on bond for several months before his trial and had the opportunity to consult with family, friends, or others during that period. It is apparent from the contents of the transcript that he is mature and of at least average intelligence. In this situation defendant was properly permitted to make his own determination as to whether he desired to be represented by an attorney and the court did not err in failing to appoint counsel for him and did not err in failing to grant him a new trial because he was not represented by counsel at the trial.

The remaining point briefed by defendant is that the court erred "in overruling the motion of defendant to vacate judgment, the record of trial proceedings conclusively demonstrating the defendant's lack of competency to waive the right to assistance of counsel and thereby depriving him of due process." Essentially, this point involves the same questions as the contention we have heretofore discussed and our ruling thereon is decisive of the present contention. While we need not (and do not) decide the question, we observe that the trial court would appear to have been warranted in overruling the motion to vacate because it was premature. We doubt that a defendant should be permitted to pursue the remedy provided by S.C. Rule 27.26, V.A.M.R., simultaneously with the prosecution of his appeal in the original case. The cases construing the similar federal statute (28 U.S.C.A. § 2255) indicate that such is not the proper procedure. See Bilderback v. United States, D.C., 159 F.Supp. 713, and cases cited therein.

As indicated, we rule that the court did not err in overruling defendant's motion to vacate.

An examination of the record as required by S.C. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

HOUSER, C., concurs.

COIL, C., not participating.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All of the Judges of the Division and HUNTER, Special Judge, concur.