**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2023**

# In the Court of Appeals of Georgia

A22A1214. IVEY v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Bryan Ivey was convicted of two counts of interference with government property. Ivey, who is proceeding pro se, filed this appeal. Some of Ivey's arguments cannot be addressed because he failed to raise them in the trial court. Others lack merit. But we agree with Ivey that the trial court did not comply with the requirements of the First Offender Act, OCGA §§ 42-8-60 through 42-8-66. So we vacate the judgment of conviction and sentence and remand for further proceedings not inconsistent with this opinion.

1. *Sufficiency of the evidence.*

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence showed

that Ivey had been an inmate at the Baldwin County jail since May 4, 2020. On July 17, 2020, an officer with the Baldwin County Sheriff's Department was monitoring the jail by video camera when he saw a bright flash of light in a common area between two dorms. A review of the video showed Ivey squatting in front of a wall and allowing inmates to stand on his shoulders to reach an electrical outlet ten feet from the ground. The inmates tampered with the electrical outlet, causing it to emit sparks and flames, burning it, and requiring it to be replaced.

A jail administrator reviewed video recordings of the common area from the days preceding the July 17 incident. A recording from July 14, 2020 also showed Ivey squatting down and allowing an inmate to climb onto his shoulders to reach the outlet. The inmate tampered with the outlet, causing it to emit sparks, so that he could light something.

Ivey testified in his defense. He testified that before the July 2020 incidents, someone already had inserted into one of the two sockets of the outlet a foreign object that conducts electricity. He explained that the inmates who climbed onto his shoulders tapped the already-inserted foreign object with a pencil lead to create a spark to ignite paper. He also testified that the outlet already had soot on it.

2

Ivey argues that the evidence did not support his convictions because the electricity-conducting foreign object already had been inserted into the socket by an unknown person before the July 2020 incidents. But he admitted that it was the actions of the inmates whom he assisted that caused the sparks and flames.

He also argues that there was no evidence that the acts damaged the outlet, as the state did not prove that the soot visible on the outlet was not present before the July 14 and July 17 incidents. We hold that the evidence allowed the jury to infer damage. The video recordings show that in both incidents, Ivey's and the other inmates' conduct caused sparks to shoot from the outlet; the jail administrator's assistant testified that the outlet was damaged; and the jail administrator testified that the outlet had been burnt and taxpayers had to pay to fix all the damage. From this evidence, the jury could infer that the outlet was damaged in each incident. "(W)e leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts, and we do not reweigh the evidence." *Pritchett v. State*, 314 Ga. 767, 770 (1) (879 SE2d 436) (2022) (citation and punctuation omitted). "Thus, viewed in the light most favorable to the verdicts, the evidence presented at trial support[ed] the jury's guilty verdicts. . . ." *Beamon v. State*, 314 Ga. 798, 803 (2) (879 SE2d 457) (2022).

2. *Applicable statute*.

Ivey argues that his conduct falls within OCGA § 36-9-11, destruction or damaging of any county building, which is a misdemeanor, as well as OCGA § 16-7-24 (a), interference with government property, which is a felony, so he should have been prosecuted for the misdemeanor.

It is true that a specific criminal statute prevails over a general one, *State v. Nankervis*, 295 Ga. 406, 410 (2) (761 SE2d 1) (2014), and arguably, OCGA § 36-9-11 is more specific than OCGA § 16-7-24 (a). But Ivey has not shown that he raised this argument in the trial court, and our review of the record does not show that he raised it. "We do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them." *Sevostiyanova v. State*, 313 Ga. App. 729, 731-732 (2) (722 SE2d 333) (2012) (citation omitted). So we do not address Ivey's argument.

3. *Right to appointed counsel at government expense*.

Ivey argues that he was entitled to appointed counsel at the government's expense. But he concedes that he is not indigent, so he was not entitled to the appointment of counsel at the government's expense. See *Allen v. Daker*, 311 Ga. 485, 504 (3) (858 SE2d 731) (2021); *Hawkins v. State*, 222 Ga. App. 461, 462 (1)

4

(474 SE2d 666) (1996). See also *Elam v. Rowland*, 194 Ga. 58, 61 (20 SE2d 572) (1942) ("If the accused has means to employ counsel . . . and neglects or refuses to do so, the court is under no obligation or duty to appoint counsel to represent him.") (citation and punctuation omitted).

4. *Malicious prosecution*.

Ivey argues that he is the victim of malicious prosecution and sentencing: because he was prosecuted when the state knew that it could not prove the crime, but as detailed in Division 1, the evidence was sufficient to support the convictions; because there was a single crime, but there were two incidents, one occurring on July 14, 2020, and one occurring on July 17, 2020; and because he could only be sentenced to a misdemeanor, but we decline to hold that any legal error in prosecuting Ivey for the felony of interference with government property instead of the misdemeanor damaging a county building amounts to malicious prosecution.

5. *Constitutionality of OCGA § 16-7-24 (a)*.

Ivey argues that OCGA § 16-7-24 (a), a subsection of the interference with government property statute, is unconstitutional because, unlike federal law, its penalty provision does not provide for a misdemeanor sentence when the property damaged has a value of less than $1,000. "Because this constitutional claim was not

raised and ruled upon in the trial proceedings below, it has been waived." *In the Interest of P. T.*, 353 Ga. App. 511, 517 (2) (838 SE2d 596) (2020). See also *Colton v. State*, 297 Ga. App. 795, 797-798 (2) (678 SE2d 521) (2009) (although challenge to the constitutionality of sentencing provisions of criminal statute would be in exclusive jurisdiction of the Supreme Court, the constitutional issue had not been raised or ruled on by the trial court so the Supreme Court did not have jurisdiction).

6. *First Offender Act.*

Ivey argues that the trial court erred by failing to address the First Offender Act with him. We agree.

Until July 1, 2015, OCGA § 42-8-61, a provision of the First Offender Act, was entitled "Defendant to be informed of terms of article at time sentence imposed," and provided that "[t]he defendant shall be informed of the terms of [the Act] at the time of imposition of sentence." The statute was amended, effective July 1, 2015. It is now entitled "Defendant to be informed of eligibility for sentencing as first offender," and it now provides:

> When a defendant is represented by an attorney, his or her attorney shall be responsible for informing the defendant as to his or her eligibility for sentencing as a first offender. *When a defendant is pro se, the court shall inquire as to the defendant's interest in entering a plea pursuant*

6

*to the terms of this article*. If the defendant expresses a desire to be sentenced as a first offender, the court shall ask the prosecuting attorney or probation official if the defendant is eligible for sentencing as a first offender. When imposing a sentence, the court shall ensure that, if a defendant is sentenced as a first offender, he or she is made aware of the consequences of entering a first offender plea pursuant to the terms of this article.

Ga. L. 2015, p. 422, § 5-74.[1] (Emphasis supplied.) The amended statute, which applies here, thus imposes a duty upon the court to ask a pro se defendant whether the defendant is interested in entering a plea under the Act. See Ben W. Studdard, Ga. Criminal Trial Practice § 27:24 (2022 ed.). The record does not show that the trial court made such an inquiry, even though Ivey has been pro se throughout the entire proceeding.

The dissent asserts that "the trial judge's duty to inquire with pro se defendants arises only when a guilty or nolo contendere plea is under consideration." Nothing

---

[1]In its February 2015 report, the Georgia Council on Criminal Justice Reform made recommendations "to [r]estore the [i]ntent of the First Offender Act." See https://dcs.georgia.gov/important-links/georgia-council-criminal-justice-reform. One of the recommendations provided that, "When imposing a sentence, the court shall be required to inquire into the defendant's eligibility for the First Offender Act and ensure that, if the defendant is eligible, he or she is made aware of the consequences of entering a plea pursuant to the terms of the Act." pp. 19-20.

in the language of the statute so conditions the trial court's duty. And of course, "[i]n interpreting statutes, we presume that the General Assembly meant what it said and said what it meant. Accordingly, we afford the statutory text its plain and ordinary meaning, and read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would[.]" *State v. Arroyo*, __ Ga. __, __ (__ SE2d __) (Case No. S22G0593, decided Feb. 7, 2023).

The dissent concludes that the First Offender Act only comes into effect at sentencing and not before. This conclusion ignores the significant changes made to the Act in 2015. As detailed above, until July 1, 2015, OCGA § 42-8-61 was entitled, "Defendant to be informed of terms of article *at time sentence imposed*." (Emphasis supplied.) It now is entitled, "Defendant to be informed of eligibility for sentencing as first offender." Similarly, until July 1, 2015, OCGA § 42-8-61 provided that "[t]he defendant shall be informed of the terms of [the Act] *at the time of imposition of sentence.*" (Emphasis supplied.) It now provides, "[w]hen a defendant is pro se, the court shall inquire as to the defendant's interest in entering a plea pursuant to the terms of this article." We must assume that the General Assembly purposefully omitted the language about the imposition of sentence. See *Minnix v. Dept. of Transp.*, 272 Ga. 566, 571 (2) (533 SE2d 75) (2000).

8

It is true, as the dissent asserts, that the First Offender Act is generally oriented toward sentencing. In that context, the dissent's reading of the statute makes sense. But "[w]hen, as here, statutory text is clear and unambiguous, our interpretive task begins and ends with the text itself." *State v. Arroyo*, __ Ga. at __. Finally, it is not remarkable that, as the dissent notes, nothing in the record indicates that Ivey ever considered entering a guilty or nolo contendere plea. Had he been informed of the possibility of entering such a plea under the Act, he might have.

The trial court's obligation under OCGA § 42-8-61 to inquire about the pro se defendant's interest in entering a plea under the First Offender Act "is express and unequivocal — ["the court *shall* inquire as to the defendant's interest"] — [but] the statute does not articulate what the remedy is for [failing to so inquire]." *In the Interest of M. D. H.*, 300 Ga. 46, 50 (3) (793 SE2d 49) (2016) (emphasis supplied) (concerning remedy for court's failure to "fix a time" for an adjudicatory hearing on a delinquency petition). And "what *is* an appropriate remedy presents a far more substantial hurdle and is an issue that neither this Court nor the Supreme Court of Georgia has considered." *State v. Dorsey*, 364 Ga. App. 731, 737 (2) (875 SE2d 900) (2022) (although trial counsel performed deficiently by misadvising defendant about

the sentence he faced if he proceeded to trial, what remedy was appropriate was unclear) (emphasis in original).

Three statutes provide potential remedies for First Offender Act errors, but all three concern remedies available *after* an adjudication of guilt while the error here occurred before Ivey had been adjudicated guilty. OCGA § 42-8-60 (k) provides that "[w]hen a defendant has not been previously convicted of a felony, the court may, *after an adjudication of guilt*, sentence the defendant pursuant to this article as provided in Code Section 42-8-66 or modify a sentence as provided in subsection (f) of Code Section 17-10-1 so as to allow a sentence pursuant to this article." (Emphasis supplied.)

OCGA § 42-8-66 (a) (1) provides that "[a]n individual who qualified for sentencing pursuant to this article but who was not informed of his or her eligibility for first offender treatment may, with the consent of the prosecuting attorney, petition the court *in which he or she was convicted* for exoneration of guilt and discharge pursuant to this article." OCGA § 42-8-66 (a). (Emphasis supplied.) OCGA § 17-10-1 (f) provides that "within 120 days after receipt by the sentencing court of the remittitur *upon affirmance of the judgment after direct appeal*, . . . the court imposing the sentence has the jurisdiction, power, and authority to correct or reduce the

10

sentence and to suspend or probate all or any part of the sentence imposed." (Emphasis supplied.)

None of these potential remedies redress the trial court's failure to inquire about the pro se defendant's interest in entering a plea under the First Offender Act — as required by OCGA § 42-8-61 — which necessarily must occur *before* an adjudication of guilt. "That said, the remedy issue was not briefed by the parties on appeal[. T]hus, we leave the issue to be briefed by the parties and considered by the trial court on remand." *Dorsey*, 364 Ga. App. at 738 (2) (footnote omitted).

Accordingly, we vacate the judgment of conviction and remand the case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Gobeil, J., concurs fully to Divisions 1 - 5, and specially to Division 6. Land, J., dissents.*

11

A22A1214.  IVEY v. THE STATE.

GOBEIL, Judge, concurring fully to Divisions 1-5, and specially to Division 6.

The First Offender Act generally comes into effect at sentencing, yet the language of OCGA § 42-8-61, as revised in 2015, no longer limits the trial court's obligation to inform a pro se defendant about the Act to the sentencing phase of a criminal proceeding. Accordingly, I agree with the Majority that the plain language of OCGA § 42-8-61 mandates its conclusion. That said, as a practical matter, it seems illogical to vacate the conviction to address an issue that is irrelevant to the defendant's guilt or innocence. However, because of the General Assembly's specific mandate for the court to "inquire as to the defendant's interest in entering a plea..." and because pleas necessarily precede an adjudication of guilt, I concur with the Majority.

A22A1214. IVEY v. THE STATE.

LAND, Judge, dissenting.

I agree with the majority that Ivey has waived his constitutional and statutory challenges to his conviction under OCGA § 16-7-24 (a) and that his arguments as to sufficiency, right to appointed counsel, and malicious prosecution fail as well.[1] However, I disagree with respect to the majority's handling of the first offender issue and accordingly dissent. The majority imposes a new requirement for trial courts to sua sponte inquire as to a pro se defendant's interest in entering a first offender plea even where a defendant has never expressed any interest in entering a guilty or nolo contendere plea and has in fact chosen not to plead guilty or nolo contendere. I do not believe this result is supported by the statutory text or the intent of the law, and I

---

[1] On Ivey's waiver of his statutory challenge to his conviction, see *Smallwood v. State*, 310 Ga. 445, 451 n. 5 (3) (851 SE2d 595) (2020) (addressing defendant's argument that more specific criminal statute prevailed over general one where review of record showed that defendant "made this argument at the hearing on the general demurrer prior to conviction and entry of judgment, thereby preserving it for appeal").

believe it imposes an unnecessary burden on the trial courts, not just in this case but in all future cases involving pro se defendants. For these reasons, I dissent.

The first provision in the First Offender Act provides as follows:

> When a defendant has not been previously convicted of a felony, the court *may*, *upon a guilty verdict or plea of guilty or nolo contendere* and before an adjudication of guilt, without entering a judgment of guilt and with the consent of the defendant, defer further proceedings and (1) [p]lace the defendant on probation; or (2) [s]entence the defendant to a term of confinement.

(Emphasis supplied.) OCGA § 42-8-60 (a). The Act comes into effect, in other words, at sentencing, and not before. OCGA § 42-8-61, amended in 2015, provides:

> When a defendant is represented by an attorney, his or her attorney shall be responsible for informing the defendant as to his or her eligibility *for sentencing* as a first offender. *When a defendant is pro se, the court shall inquire as to the defendant's interest in entering a plea pursuant to the terms of this article.* If the defendant expresses a desire to be sentenced as a first offender, the court shall ask the prosecuting attorney or probation official if the defendant is eligible for sentencing as a first offender. *When imposing a sentence, the court shall ensure that, if a defendant is sentenced as a first offender, he or she is made aware of the consequences of entering a first offender plea pursuant to the terms of this article.*

2

(Emphasis supplied.) Again, these emphasized portions show that the issue of first offender treatment is a sentencing issue and that the trial judge's duty to inquire with pro se defendants arises only when a guilty or nolo contendere plea is under consideration. There is nothing in the text of the statute that places this duty on the trial court prior to its consideration of a guilty or nolo contendere plea, and I do not believe we should create that duty.

There is no indication in the record before us that Ivey ever considered entering a guilty or nolo contendere plea. According to that record, no such plea was ever presented to the trial court at any time. Under these circumstances, I would hold that the trial court has no duty to make the inquiry set forth in OCGA § 42-8-61.[2] See *Camaron v. State*, 246 Ga. App. 80, 82 (1) (539 SE2d 577) (2000) (absent evidence that a trial court affirmatively refused to consider a defendant's first offender status, the court was presumed to have acted correctly); *Griffin v. State*, 244 Ga. App. 447, 448 (535 SE2d 783) (2000) (under the previous version of OCGA § 42-8-61, and in

_____

[2] The cases cited by the majority for the proposition that such a requirement exists do not cite or discuss OCGA § 42-8-61 and are therefore inapposite. Likewise, its quotation from the Council on Criminal Justice Reform confirms that the trial court "shall be required to inquire into the defendant's eligibility for the First Offender Act" only "[w]hen imposing a sentence" (p. 8 n. 1), and not at any time before.

3

the absence of a request by the defendant, the trial court was not obligated to consider defendant's eligibility for first offender status). Because Ivey has not shown that the trial court erred in failing to raise the first offender issue under the circumstances of this case, I would affirm his conviction.