CHESTER SKIBA, Petitioner, v. PAUL E. KAISER, Warden, Missouri State Penitentiary.—No. 38952.—178 S. W. (2d) 373.

Court en Banc, February 16, 1944.

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■

■■■■■■

*Scott Peters* for petitioner.

*Roy McKittrick,* Attorney General, for respondent.

■■■■ TIPTON, J.—Habeas Corpus. In the circuit court of Lincoln County, Missouri, the petitioner pleaded guilty to the chargè of robbery in the first degree, by means of a dangerous and deadly weapon, as that crime is defined by Section 4453, R. S. Mo. 1939, and his punishment was assessed by the trial court at imprisonment in the State Pententiary for a term of thirty-five years.

The facts developed at the hearing of this case are as follows: On August 11, 1943, the Peoples Bank at Hawk Point, Lincoln County, Missouri, was robbed. The petitioner testified at the hearing before this court, stating that he and two other men were arrested by the State Highway ■■■■ Patrol near Clarksville, Missouri, on August 11, 1943, and were taken by the State Highway Patrol to Kirkwood, Missouri, where they were questioned by these officers that day and then put in the jail at St. Charles, Missouri, for the night. The next day they were again taken to Kirkwood and the officer told him that one of his companions had confessed to the robbery and implicated him, that he, too, should confess. Petitioner, also, testified that he was told that if he did not confess, he would get ''beat up'' in the same manner that he had seen one of his companions treated the day before. He then signed a confession and was taken to the Lincoln County jail. On August 12, 1943, petitioner and his two companions were taken before a justice of the peace, A. T. Norton, for a preliminary hearing. Petitioner testified before us that he asked the justice of the peace for counsel and was told if he had any money he could hire one.

The petitioner told the justice of the peace that the officers had his money, to which the justice of the peace replied, "That is not your money, it belongs to the bank." He told the justice of the peace that sixty dollars of the money the officers held did belong to him. He said that he waived a hearing before the justice of the peace on the advice of one of his companions. Also, he asked permission of the sheriff to telegraph his relatives in Ohio, but this request was denied him. He, also, stated that relying upon what the justice of the peace told him about having a lawyer, he did not ask the court to appoint him one at the time he was arraigned in the circuit court. At that time, he and his two companions pleaded guilty and he was given a thirty-five year sentence in the penitentiary.

In presenting this case, his attorney stated to this court that they did not deny the petitioner's guilt, but that petitioner contended his conviction was illegal because an attorney was not appointed to represent him. Other pertinent facts will be stated during the course of this opinion.

Petitioner first contends that the judgment and sentence of the trial court is illegal because he was not furnished an attorney at his preliminary hearing. We have recently ruled adversely to petitioner's contention in the case of Lambus v. Kaiser, 352 Mo. 122, 176 S. W. (2d) 494. In that case, we said, "It has long been established by our decisions that a preliminary examination may be waived and is now so provided by statute. If the accused pleads and goes to trial without calling the court's attention.to the State's failure to accord him such examination, he is held to waive it." The record shows that the petitioner, by affirmative action, waived the preliminary examination. If he had had counsel at that time, the magistrate would have been required to send for him if requested, (See Section 3867, R. S. Mo. 1939) but there is no constitutional provision, statute, or decision in this State requiring the justice to appoint counsel for prisoner at a preliminary examination.

Petitioner next contends that the circuit court should have appointed him counsel when he was arraigned. It is to be remembered that petitioner did not request the court to appoint him counsel. On the other hand, the petitioner pleaded guilty when.he was arraigned. Even in this court, his counsel states in open court that "he did not deny his guilt." If he had made such request, no doubt the trial court would have appointed him counsel. Section 22, Article II, of our State Constitution provides, "In criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; . . . " This provision gives the accused only the right to be defended by counsel, a right denied him by English law until 1836. See Powell v. Alabama, 287 U. S. 45, 53 S. Ct. R. 55, 1. c. 61, 77 L. Ed. 158, 84 A. L. R. 257, and Betts v. Brady, 316 U. S. 455, 1. c. 466, 62

S. Ct. R. 1252. No doubt this provision was embodied in our State Constitution to correct this abuse.

In aid of this constitutional provision, the Legislature of this State passed what is now known as Section 4003, R. S. Mo. 1939: "If any person about to be arraigned upon an indictment for a felony be without counsel to conduct his defense, and be unable to employ any, it shall be the duty of the court to assign him counsel, at his request, not exceeding two, who shall have free access to the prisoner at all reasonable hours." In this case, petitioner did not request counsel, and, therefore, waived the right to counsel. State v. Terry, 201 Mo. 697, 100 S. W. 432; State v. Miller, 292 S. W. 440. Under these circumstances, there is no duty on the trial court to appoint him counsel.

Petitioner, also, contends that under the Fourteenth Amendment of the Constitution, his conviction was invalid because the trial court failed to appoint him counsel.

To sustain his contention, he relies principally upon the case of Powell v. Alabama, supra. In that case, the Supreme Court of the United States said, "Under the circumstances . · . . the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process . . `. ." That Court, further, said, "Whether this would be so in other criminal prosecutions, or under other circumstances, we need not determine. All that it is necessary now to decide, as we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law . . ."

The facts in the case at bar, however, are very different from the facts in the Powell case. When the petitioner testified before us, he appeared to be a man above thirty years of age, and a man of average intelligence. He answered the questions propounded to him intelligently. He pleaded guilty in the trial court, and even in this court his counsel voluntarily stated that he did not deny his guilt. He stated to the justice of the peace that of the money the officer took from him, sixty dollars of that amount belonged ·to him, implying that the balance belonged to the robbed bank.

Neither can the case of Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. R. 1019, be an authority for the petitioner's contention. That was a case in the Federal Court and involved the Sixth Amendment to the United States Constitution. That amendment applied only to trials in the Federal courts. Betts v. Brady, supra.

We think this case comes within the principle of law announced by the Supreme Court of the United States in the case of Betts v. Brady,· supra. In that case, Betts was charged with the crime of robbery

428

in the State of Maryland. He was unable to employ counsel to defend him, but the trial court refused to do so. He then brought a habeas corpus action in the Supreme Court of the United States on the ground that he had been denied due process as guaranteed by the Fourteenth Amendment in that he was forced to defend himself without the aid of counsel. That court said, ''That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.''

The court in that case stated the petitioner's contentions as follows: ''He says the rule to be deduced from our former decisions is that, in every case, whatever the circumstances, one charged with crime, who is unable to obtain counsel, must be furnished counsel by the State. Expressions in the opinions of this court lend color to the argument, but, as the petitioner admits, none of our decisions squarely adjudicates the question now presented.''

After discussing the various state laws in appointing counsel for pauper defendants in criminal cases, that court said: ''This material demonstrates that, in the great majority of the States, it has been the considered judgment of the people, their representatives and their courts that appointment of counsel is not a fundamental right, essential to a fair trial. On the contrary, the matter has generally been deemed one of legislative policy. In the light of this evidence, we are unable to say that the concept of due process incorporated in the Fourteenth Amendment obligates the States, whatever may be their own views, to furnish counsel in every such case. Every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness. . . . In this case there was no question of the commission of a robbery. The State's case consisted of evidence identifying the petitioner as the perpetrator. The defense was an alibi. Petitioner called and examined witnesses to prove that he was at another place at the time of the commission of the offense. The simple issue was the veracity of the testimony for the State and that for the defendant. . . . As we have said, the Fourteenth Amendment prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right, and while want of counsel in a particular case may result in a conviction lacking in such fundamental fairness, we cannot say that the Amendment embodies an inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel.''

In the case at bar, the petitioner does not contend that his plea of guilty was obtained by fraud, duress, or oppression. His only reason why our writ should issue is that he was not assigned counsel, in spite of the fact he made no request for one. It is true the trial court assessed a severe punishment, but under Section 4453,

supra, the least the trial court could assess was ten years, the maximum was death. He was a mature man of average intelligence. Under the facts of this case, we cannot say he was denied due proceess of law, even if his family lived in Ohio and he had no money to employ counsel. He failed to inform the trial court that he wanted counsel. Therefore, he cannot use a writ of habeas corpus to obtain a release for the mere purpose of bartering with the State to get a lighter sentence.

█ Petitioner's last contention as to why the trial court's sentence and judgment is illegal is that he was not taken forthwith before the magistrate (justice of the peace) in Lincoln County, but was taken to Kirkwood and held for two days until he signed a confession and was denied by the officers of the State Patrol the right to communicate with his relatives in Ohio.

There is no doubt but that it was the duty of the officers of the State Patrol after they arrested the petitioner to have taken him forthwith before the justice of the peace in Lincoln County, as provided by Section 8360, R. S. Mo. 1939. That Section reads as follows: "Any person arrested by a member of the patrol shall forthwith be taken by such member before the court or magistrate having jurisdiction of the crime whereof such person so arrested is charged there to be dealt with according to law." This, however, in itself, did not affect the validity of his conviction, because the confession obtained by these officers at Kirkwood was not used against him. If he had stood trial, no doubt the trial court would have excluded this confession if it had been offered; provided, of course, that the same facts as developed in reference to the confession were developed in the trial court as they were developed before us.

Petitioner relies upon the case of McNabb et al. v. United States, 318 U. S. 332, 63 S. Ct. R. 608, l. c. 615, 87 L. Ed. 579. In that case, the petitioners stood trial and the only evidence sufficient to sustain a conviction against them were their confessions, which they repudiated at the trial. In passing on that case, the Supreme Court of the United States said: "Instead of being brought before a United States Commissioner or a judicial officer, as the law requires, in order to determine the sufficiency of the justification for their detention, they were put in a barren cell and kept there for fourteen hours. For two days they were subjected to unremitting questioning by numerous officers. Benjamin's confession was secured by detaining him unlawfully and questioning him continuously for five or six hours. The McNabbs had to submit to all this without the aid of friends or the benefit of counsel. The record leaves no room for doubt that the questioning of the petitioners took place while they were in the custody of the arresting officers and before any order of commitment was made. Plainly, a conviction resting on evidence secured through such a flagrant disregard for the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves

accomplices in wilful disobedience of law. Congress has not explicitly forbidden the use of evidence so procured. But to permit such evidence to be made the basis of a conviction in the Federal courts would stultify the policy which Congress has enacted into law.''

That case is not in point. As previously stated, the petitioner pleaded guilty in the trial court and does not even now deny his guilt in this court, but the confession obtained by the State Patrol officers was not used against him.

Accordingly, our writ of habeas corpus is quashed and the petitioner is remanded to the custody of the respondent. All concur.