**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Frederick Sam MISCHANKO, Defendant-Appellant.**

**No. 44149.**

Supreme Court of Missouri.

Division No. 2.

Oct. 11, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 8, 1954.

James C. Morris, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

BENNICK, Special Judge.

This is a proceeding instituted in the Circuit Court of Jackson County to vacate a sentence imposed upon one Frederick Sam Mischanko following the return of a verdict finding him guilty of the offense of burglary in the second degree and assessing his punishment at imprisonment in the state penitentiary for a term of two years.

The proceeding was brought under the authority of 42 V.A.M.S. Rule 27.26 of the Rules of Criminal Procedure, which provides that a prisoner in custody under sentence and claiming the right to be released upon the ground, among others, that such sentence was imposed in violation of the Constitution and laws of this state or of the United States, may file a motion at any time in the court which imposed such sentence to vacate, set aside, or correct the same.

The precise question in this case is whether the defendant, Mischanko, was denied his rights under the Constitutions of this state and of the United States, and also under the law of this state and the

rules of this court, by reason of the trial court's failure to appoint counsel to represent him during the period of eleven days between the return of the verdict of guilty and the imposition of sentence upon the verdict, whereby defendant claims that he was prevented from having a motion for a new trial filed in his behalf.

The record shows that when defendant appeared without counsel for arraignment on the charge of burglary in the second degree, the court informed him of the nature of the charge against him and the punishment therefor, and also informed him of his right to counsel and explained wherein the exercise of such right might be of benefit to him. The record further discloses that after interrogating defendant, the court found that he was mentally able and sufficiently informed to determine his need for counsel, whereupon defendant was duly arraigned and entered a plea of not guilty.

When the case came on for trial on October 7, 1953, defendant appeared with counsel of his own selection, and the parties announced ready for trial, which was thereupon begun and was concluded on the following day, October 8, 1953, with the return of the verdict already indicated.

The difficulty at the bottom of this proceeding grows out of the fact that upon the return of the verdict on October 8th, defendant's counsel informed defendant that he was withdrawing from the case, and then made his statement good on October 14th when he filed his formal notice of withdrawal with the court, a copy of which defendant received through the mail on the following day. Defendant was of course in custody and confined in jail at the time.

When defendant was brought before the court for allocution and sentence on October 19, 1953, with his former lawyer, Roy Brown, and also the assistant prosecuting attorney, Sheldon P. Sandler, both present in court, the following occurred:

"The Court: On October 8, 1953, a jury found you guilty of burglary second degree and fixed the penalty at two years in the state penitentiary. I understand there has been no motion for new trial filed?

"Mr. Roy Brown: No, Your Honor.

"The Court: Do you have anything to say to the court, any reason why the court should not pronounce sentence on you?

"The Defendant: I wrote a letter.

"The Court: We will get to that.

"The Defendant: I was going to have my lawyer file a motion for new trial.

"The Court: It is too late. The time has gone by.

"The Defendant: I didn't get my notification officially that the lawyer had withdrawn from the case.

"The Court: You have the other case. Naturally, if you do not have an attorney in that, the court will appoint you one; but in the case that was tried, the time has passed for filing motion for new trial.

"Mr. Sandler: At that time Mr. Brown informed the court and the defendant that he was withdrawing.

"The Court: Mr. Brown, did you tell the man that you weren't going to represent him?

"Mr. Brown: Yes, sir; and I got the papers to him last Thursday or Wednesday; but I informed him right here in court I was not going to proceed further with his trial.

"The Defendant: I got word Wednesday he was withdrawing, and I received notice through the mail that he has legally withdrawn from the case; Thursday I received through the mail the letter that he filed here with the court, I got a copy of it Thursday in the mail, that he had withdrawn from the case.

"The Court: Anything further?

"The Defendant: No, sir.

"The Court: In case No. C–25591, the case we have been discussing, the judgment and sentence is two years in the Missouri state penitentiary in accordance with the verdict of the jury."

After the pronouncement of sentence the court inquired of defendant whether he desired to have the court appoint an attorney to defend him on a second pending criminal charge, and upon defendant's answer in the affirmative, the court appointed counsel, who then assumed the burden of also representing defendant in connection with the phase of the prior case with which we are presently concerned.

On October 29, 1953, defendant, through his counsel, filed his motion to vacate and set aside the sentence and judgment upon the ground already noted—that because of the court's failure to have appointed counsel to represent him during the period of eleven days between the return of the verdict of guilty and the imposition of sentence upon the verdict, he had been prevented from having a motion for a new trial filed in his behalf, and had thereby been denied his rights under the Constitution of this state and of the United States, and also under the law of this state and the rules of this court.

There was no evidence heard upon the motion, and on November 12, 1953, the court entered an order that the motion be overruled. Defendant thereupon gave timely notice of appeal, and by subsequent steps has caused the proceeding to be transferred to this court for our review.

The Constitution of this state provides that in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel. Art. I, Sec. 18(a), Constitution of 1945, V.A.M.S. So far as concerns its relation to the broad question now at issue, suffice it to say that this provision merely gives the accused the right to be defended by counsel, which is a right of ancient recognition in our American judicial system, though not originating in the common law, and in fact denied under English law until as late as 1836 in prosecutions upon the general issue of not guilty upon any indictment for a felony. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Skiba v. Kaiser, 352 Mo. 424, 178 S.W.2d 373. In this case there is and could be no claim that defendant was denied any right under such constitutional provision. On the contrary, he was actually defended by counsel throughout the trial, and might unquestionably have continued to be so represented had he not, according to his own statement in his motion to vacate, had a disagreement with his counsel that resulted in the latter's withdrawal from further participation in the case.

In supplement to this constitutional provision the Legislature has enacted Section 545.820 RSMo 1949, V.A.M.S., which provides that if any person about to be arraigned upon any indictment for a felony be without counsel to conduct his defense, and be unable to employ any, it shall be the duty of the court to assign him counsel.

In addition to the above, this court, in promulgating the Rules of Criminal Procedure, has written Rule 29.01, which embodies and enlarges upon the rights accorded an accused by the foregoing constitutional and statutory provisions.

This rule provides, in conformity with the constitutional provision, that in every criminal prosecution in any court of this state, the accused shall have the right to appear and defend the same in person and by counsel.

It then provides, in line with the statutory provision, that if any person charged with the commission of a felony appears upon arraignment without counsel, it shall be the duty of the court to advise him of his right to counsel, and of the willingness of the court to appoint counsel to represent him if he is unable to employ counsel. If the defendant so requests, and it appears that he is unable to employ counsel, it shall be the duty of the court to appoint counsel to represent him. But if, after being informed as to his rights, the defendant indicates his desire to proceed without the benefit of counsel, and the court finds

that he has intelligently waived his right to have counsel, the court shall have no duty to appoint counsel unless it appears to the court that because of the gravity of the offense charged and other circumstances affecting the defendant, the failure to appoint counsel may result in injustice to him.

It is to be observed that both the statute and the rule are limited by their express terms to situations where the accused appears upon arraignment without counsel, so that the court becomes charged with the duty to inform him in the first instance of his right to counsel, and then to appoint counsel for him if he so requests and is unable to employ counsel for himself. The record discloses, as we have already pointed out, that when defendant was arraigned, the court was most careful to comply with all the requirements of the rule with respect to informing defendant of his right - to counsel, and specifically found from its interrogation of defendant that he was mentally able and sufficiently informed to decide his need for representation. While the court did not appoint counsel for him, he appeared at the trial with counsel of his own employment; and again there is and could be no sound basis for claiming that defendant was denied any right under either Section 545.820 or Rule 29.01.

■■ The Sixth Amendment to the Constitution of the United States provides, among other things, that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense. Not only does this language (the same as does that of our own Constitution) entitle an accused to be represented by counsel of his own selection, but it is now understood as also granting to an indigent accused the right to have the court appoint counsel to assist him whatever the nature of the offense. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. However the Sixth Amendment applies only to trials in the federal courts, and has no application to a prosecution such as this which was brought in a court of one of the several states. Betts v. Brady,

316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955; Skiba v. Kaiser, supra.

It therefore follows as an inevitable result of the Sixth Amendment's inapplication to criminal proceedings in state courts that one accused of a crime in a state court who would complain that the failure of the court to appoint counsel for him was violative of his rights under the Constitution of the United States must rely upon the language of the Fourteenth Amendment, which provides, among other things, that a state shall not deprive any person of life, liberty, or property without due process of law. Realizing this necessity, defendant, in this very proceeding, has based his motion to vacate "more particularly" upon the Fourteenth Amendment; and as a consequence the real question for our decision is whether the lower court's failure to appoint counsel at the stage of the case and under the circumstances already indicated was a denial of due process which the Fourteenth Amendment guarantees.

■ In all inquiries into the question of when a failure to appoint counsel may be said to contravene the due process clause of the Fourteenth Amendment, the courts have ever been conscious of the impossibility of defining due process in terms that would be precise, complete, and appropriate under any and all circumstances. However stripped of all refinements, and considered from the standpoint of the ultimate goal to be accomplished, the guarantee of due process which the Fourteenth Amendment secures against invasion by the states simply means in the last analysis that the accused shall have a fair trial, which may impose upon the court the duty to furnish him with counsel in order to conform to the common and established ideas of fairness and right which are embraced within the concept of due process of law.

■ Beginning with Powell v. State of Alabama, supra, and as reaffirmed in the course of its subsequent decisions, the Supreme Court of the United States has ap-

parently taken the definite stand that in all capital cases tried in a state court, counsel must be assigned for an indigent defendant whether requested or not, and that failure to assign counsel to assist a defendant charged with a capital offense, or to give a fair opportunity to a defendant's counsel to assist him in his defense, is a denial of due process under the Fourteeenth Amendment. Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986. Furthermore the federal decisions make it clear that state policy in regard to the appointment of counsel in capital cases has no controlling effect upon the question of whether due process has been observed. Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398.

■ But despite the necessity for counsel in capital cases, the Supreme Court holds that the Fourteenth Amendment, in its prohibition upon the states, does not incorporate all the rights guaranteed under the Sixth Amendment, and that the concept of due process embraced in the Fourteenth Amendment does not obligate the states, whatever may be their own legislative or judicial policy, to furnish the accused with counsel in every case. On the contrary, the Fourteenth Amendment only prohibits the conviction of one whose trial is conducted in such a way as to be offensive to the common and fundamental principles of fairness and right, and the appointment of counsel is not in and of itself a fundamental right essential to a fair trial in every state case. While want of counsel in a particular case may indeed result in a conviction lacking in such fundamental fairness, the Fourteenth Amendment does not embody an inexorable command that no trial for any offense can be fairly proceeded with and justice accorded to an accused not represented by counsel; and so it is that in non-capital cases (of which the case at bar is one), the failure to assign counsel does not amount to a denial of due process as guaranteed by the Fourteenth Amendment unless there are aggravating circumstances in the case disclosing that because of the lack of counsel the accused did not enjoy the fair notice and adequate hearing which constitute the foundation of due process in the trial of any criminal charge. Betts v. Brady, supra; Foster v. People of State of Illinois, supra; Bute v. People of State of Illinois, supra; Skiba v. Kaiser, supra.

■ In other words, the truth of any asserted deprivation of due process where capital punishment is not involved is to be tested by an appraisal of the totality of facts in the particular case, including such matters as the gravity of the charge, the complexity of the issues, the age of the accused, his intelligence and education, and his familiarity with court procedure. Assuming the presence of special circumstances of the nature noted, manifesting that lack of counsel might well be calculated to prevent an accused from having a fair trial, the court must then inform an indigent defendant of his right to counsel and appoint counsel for him in the absence of an intelligent and competent waiver of such right; but otherwise a mere failure to appoint counsel is not, standing alone, to be construed as a denial to a defendant of due process of law.

While it is true that in undertaking to apply these principles to the facts and circumstances of the case at bar it is our duty to review the record de novo, Rule 28.05 of Rules of Criminal Procedure, such authority avails us but little in the present instance for the reason, as we have already pointed out, that no evidence was offered at the hearing on the motion to vacate, although defendant was represented by counsel at the time. Admittedly the motion does not prove itself; and all we have from which to draw our conclusion as to whether defendant was denied any constitutional right is the bare recital of what took place before the bench when defendant was called up for allocution and sentence.

Except for the fact that defendant wrote a letter to the court, he neither had nor requested any communication with the court after the withdrawal of his counsel and until he was brought in for allocution. The court obviously did not take the letter as calling for any special action on its part in

defendant's behalf, and if defendant himself regarded the letter as having been of any great importance, it would logically have been expected that his counsel would have had him take the stand and reveal its contents upon the submission of the motion to vacate the sentence.

The fact is, however, that we need not indulge in speculation as to what the letter contained, since there would be nothing to disclose a denial of due process even if we were to assume that defendant had complained in his letter that for lack of counsel he was being prevented from having a motion for a new trial prepared and filed in his behalf.

■ The usual case involving a claim of denial of due process because of the failure of the court to appoint counsel for an indigent defendant is one where the defendant is sent to trial without counsel, notwithstanding his inability, in the light of any one or more of the considerations already discussed, to make adequate presentation of his defense. But in this case defendant was represented by competent counsel at every step of the trial, which presents a far different situation from that in which an untrained and perhaps ignorant defendant is put to the impossible test of undertaking to handle his own case. In this instance not only did defendant have the aid of counsel to safeguard his rights at every step of the proceeding up to and including the verdict of guilty, but the thing most significant of all is that at no time either in the motion to vacate or in the argument and submission of the matter in this court (in all of which defendant has been represented by counsel), has there been the least suggestion of any error occurring against defendant which might have warranted the granting of a new trial. The court is no more required to do a vain and useless thing on motion to vacate than in any other kind of legal proceeding; and before defendant may put the court in the wrong for having refused to set aside his sentence after a completed trial at which he had had the active aid of counsel, he should at the very least make some substantial showing that by reason of something that was done over the objection of his counsel, an ingredient of such manifest unfairness and injustice crept into the case as to have resulted in his being denied due process of law unless he was permitted to bring the matter to the court's attention as a basis for the allowance of a new trial.

It follows that the order of the circuit court overruling the motion to vacate should be affirmed, and it is so ordered.

LEEDY, Acting P. J., ELLISON, J., and BROADDUS, Special Judge, concur.