STATE of Missouri, Respondent,

v.

James A. SPROUSE, Jr., Appellant.

No. 45172.

Supreme Court of Missouri.

Division No. 1.

Feb. 13, 1956.

Von Mayes, Caruthersville, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

HYDE, Judge.

This is a proceeding under 42 V.A.M.S. Supreme Court Rule 27.26 to vacate judgment and sentence of 30 years imprisonment for second degree murder entered on defendant's plea of guilty December 28, 1950. The Court denied relief and defendant has appealed, seeking review under Supreme Court Rule 28.05.

Defendant testified by deposition that, on November 7, 1950, when he was 18 years old, he shot and wounded his brother George L. Sprouse, who died on November 9, 1950; that the Court appointed counsel for him but that he was never visited in the jail by counsel. In his present testimony, he said the shooting was in self-defense (stated as a conclusion) but he did not say that he made that to his counsel at the time. He said he was informed by his appointed counsel (it appears he and his father had conferences with him in the courthouse) that the Prosecuting Attorney said he would get the death penalty if he stood trial and that his mother and father became afraid of what would happen if he stood trial and urged him to plead guilty to second degree murder, which he did. He also said his appointed counsel had not investigated the facts of his case and left the matter entirely to him and his parents. He said he was worried and confused and acted through fear and fright and not because he thought he was guilty.

Defendant was charged with first degree murder in an information filed November 21, 1950. The Prosecuting Attorney said he told defendant's mother "the sentiment was awful high at Steele and some of them down there thought he might go to the gas chamber" and that he told defendant's counsel "it was a pretty serious offense and the sentiment was pretty high." He said he never threatened defendant

and there wasn't anything different about the way this case was handled than any other criminal case.

William Ragland was appointed by the Court to represent defendant. He graduated from law school and was licensed to practice in 1948. He had served as a Workmen's Compensation Referee for two years before locating in Caruthersville. He had been there several months before he was appointed but this was his first criminal case. He said that, when he was appointed he had a conference with defendant and his father and met with them a second time after he had discussed the case with the prosecuting attorney and the judge. He did not go to Steele to make an investigation of the facts but got his information from defendant and defendant's father who was either an eyewitness to the shooting or had talked to an eyewitness, he did not now remember which. He did not recall all of the facts but believed he based his opinion of the case on what defendant told him in the presence of his father and that he discussed it with his father who was familiar with the facts. His belief was that while deceased may have mistreated defendant, there was no indication that at the actual time the defendant fired the shot that his life was in danger. It was his recollection that at that time there was a lot of sentiment against defendant. After his first meeting with defendant and his father, he talked to the Prosecuting Attorney and was told that he would waive murder in the first degree and recommend thirty years. Ragland said he was apprehensive about the Court even agreeing to the Prosecuting Attorney's recommendation, so he went to see Judge Schult about it. He said: "I told him since I had been appointed and was inexperienced I hoped he would not mind me discussing the case with him, and I asked him if a plea of guilty were entered and the State recommended thirty years, what his 'sentence would be. As I recall, Judge Schult said he would follow the State's recommendation." After that he had another conference with defendant and his father, which he related as follows: "I told them the Prosecuting Attorney would recommend thirty years and that the Judge would follow that recommendation, if he entered a plea of guilty. I asked them what they wanted to do and the boy told me he wanted to plead guilty. I believe the father also insisted that the boy plead guilty. * * * I believe the father said to the boy, 'If you are going to save your life, I believe that is the best thing to do.' * * * The best I can recall I did not recommend to him that he plead in any way. I merely transmitted the offer or the information as to what he would get if he did enter a plea of guilty. I presume I also said, 'If you see fit, I will try your case for you.' I made no other recommendation." He said defendant's father was advising him more than he was. Defendant's father was not a witness at the hearing.

■ Defendant first contends that the allegations of his motion to set aside judgment and sentence must be accepted as true because the State filed a motion to dismiss on the ground that his motion failed to state sufficient facts to warrant the relief requested. Of course, this was true for the purpose of ruling the motion to dismiss but that motion was in effect overruled (although no formal order overruling it appears), or at least it was waived by the State, because the Court ordered a hearing on the merits of defendant's motion and both parties offered evidence on the merits. Rule 27.26 requires no responsive pleading to a motion to set aside judgment and the Court decided the case on the evidence heard. Therefore, we consider the judgment of dismissal final and will review the case de novo as provided in Rule 28.05. (See State v. Hurst, Mo.Sup., 280 S.W.2d 115.)

■ Defendant's main contention is that he was incapable of making his own decision and really acted without advice of counsel because his counsel did not advise him what to do; and that his counsel did not investigate the facts to qualify himself to advise him. Our view is that defendant's showing is not sufficient to require vacation of the judgment and sentence.

It is true that misconduct, neglect or incompetency of appointed counsel might raise an issue of fair trial. (See Adams v. United States, 95 U.S.App.D.C. 354, 222 F.2d 45, 47 and cases cited; see also Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; and discussion of the matter in State v. Mischanko, Mo.Sup., 272 S.W.2d 210.) However, in United States v. Helwig, 3 Cir., 159 F.2d 616, 617, it was said: "We cannot hold that lack of experience is the equivalent of incompetence for competent defense may be accomplished by inexperienced counsel." Appointed counsel in this case appeared frank and honest in stating at the hearing that he realized his inexperience; that he was worried about the case and his responsibility of trying it; and that as a matter of hindsight he thought perhaps other older lawyers, named by him, might not have entered a plea of guilty, although he felt that under the circumstances it was a pretty good deal to get off with 30 years. It certainly appears that he was conscientious about his duties and that he sincerely believed from what defendant and his father told him about the facts that it was the best thing to do to plead guilty to second degree murder with the assured sentence of 30 years.

This is not a case where the plea was hurried as it was entered more than a month after the information was filed. A thorough investigation is of vital importance, especially in preparation for trial, and appointed counsel has the same obligations to his client as one who is paid. While counsel did not go to Steele (where the shooting took place) to talk to witnesses, it appears from what defendant and his father told him that there was no self-defense issue and it does not appear from this record that there was any one who could have given him different information about the facts than he had from them, or that the course he took was not best on the basis of the facts as they stated them. The fact that counsel did not tell defendant to plead guilty or insist that he do so or not do so, does not mean that he did not advise him and represent him. It is obvious that he was advising with defendant and his father to determine what was best for him to do. Certainly it was a substantial result to obtain the reduction of a first degree murder charge to second degree and to get a recommendation for a sentence (which the Court would accept) below the maximum punishment for second degree murder. The record indicates that defendant and his family considered it a good result at the time under the circumstances and felt that it should be accepted. The trial court saw the witnesses at the hearing on this motion, and was in a better position than we are to determine their sincerity and good faith. Upon the showing made in this record, we cannot hold that the trial court reached an incorrect result in overruling the motion.

The judgment is affirmed.

All concur.