Junior Fenton EDWARDS, Petitioner,

v.

Elbert V. NASH, Warden, Missouri State Penitentiary, Respondent.

No. 22662.

Kansas City Court of Appeals.

Missouri.

June 3, 1957.

James V. Horn, Kansas City, for petitioner.

John M. Dalton, Atty. Gen., and Harold L. Henry, Asst. Atty. Gen., for respondent.

CAVE, Justice.

This is a habeas corpus proceeding filed directly in this court, whereby the petitioner seeks to be released from the penitentiary because the judgment and sentence of the trial court is illegal, for the reasons hereafter discussed.

All italics herein are supplied.

The petition alleges in substance that the petitioner was charged, by information, with robbery in the first degree by means of a *dangerous* and *deadly weapon,* which is a capital offense, punishable by a prison sentence or death; Section 560.135 RSMo 1949, V.A.M.S.; that he entered a plea of guilty to such charge and was sentenced by the Circuit Court of Barton County to a term of fifteen years in the penitentiary; that at the time of his arraignment and sentencing he was not represented by counsel; that the trial court did not advise him of his right to be represented by counsel, or offer to appoint counsel to represent him, or advise with him; that his rights guaranteed by the Fourteenth Amendment to the Constitution of the United States were violated, and the judgment and sentence entered on his plea of guilty is illegal and void. The allegations in the petition are not inconsistent with the judgment and sentence as certified and filed in this court.

Upon the filing of the petition, our writ issued and the respondent (warden) made return, alleging that he was holding petitioner under a writ of commitment issued by the Circuit Court of Barton County.

The facts are not in dispute. On March 13, 1943, the Prosecuting Attorney of Barton County filed complaint in the justice of the peace court, charging the petitioner with robbery in the first degree by means of a dangerous and deadly weapon; that he was immediately arrested and confined in the county jail until April 12, 1943, at which time an information was filed in the circuit court and he was brought into court and entered a plea of guilty as charged and sentenced to fifteen years in the state penitentiary.

The judgment and sentence of the court merely recites that the prosecuting attorney for the state and the defendant in person and in custody of the sheriff come into court, "and upon being first duly arraigned and hearing read the information herein, says for his plea thereto that he is guilty as charged in said information. Whereupon the court assesses his punishment at fifteen years in the Missouri Penitentiary, * *."

At the time of his plea of guilty, petitioner was eighteen years of age, and was a stranger in Barton County, without friends or relatives there. His parents were separated. His mother lived in the State of Kansas, and he considered her residence his home.

It is conceded by the state, and the court records support such concession, that the plea of guilty was entered without the appointment of counsel; without the petitioner being advised of his right to counsel; and without the court explaining to him the possible consequences of a plea of guilty. He testified before us that he *did not request counsel*, and that he did not know of his right to do so.

So that there may be no confusion about the question of whether petitioner has already served his sentence, we mention the fact that he was paroled in August, 1950, and was at liberty for approximately four years, before being returned for violation of his parole. Consequently, the original sentence has not been completely served.

It might be well to point out at this juncture that Sec. 560.135, supra, defines three degrees of robbery, with different punishment for each degree, and as a further complication for the inexperienced, the section divides first degree robbery into two categories; the first, if it is committed by means of a dangerous and deadly weapon, the punishment may be death; but if committed "by any other means", the punishment is limited to a penitentiary sentence. Furthermore, Sec. 560.120 defines the elements of robbery in the first degree; Sec. 560.125 defines the elements of robbery in the second degree; and Sec. 560.130 defines the elements of robbery in the third degree. We call attention to these provisions because the petitioner, an eighteen year old boy, plead guilty to the maximum charge. We are sure he did not have the slightest knowledge of the provisions of these various statutes.

The question for decision is whether the rights of petitioner under the Fourteenth Amendment have been violated. This amendment provides, among other things, that a state shall not deprive any person of life, liberty or property without due process of law.

In Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 768, 92 L.Ed. 986, the court defined, in general terms, the meaning and scope of "due process of law", in cases of this kind, and said:

"The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several states and make them the test of what it requires; nor does it enable this court to revise the decisions of the state courts on questions of state law. What it does require is that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as 'law of the land.' Those principles are appli-

cable alike in all the states and do not depend upon or vary with local legislation. * * *

"This court has never attempted to define with precision the words 'due process of law,' nor is it necessary to do so in this case. It is sufficient to say that there are certain immutable principles of justice, which inhere in the very idea of free government, which no member of the Union may disregard, as that no man shall be condemned in his person or property without due notice and an opportunity of being heard in his defense".

The foregoing statements are referred to with approval in many other opinions of the supreme court.

■ Furthermore, the federal decisions make it clear that state policy in regard to the appointment of counsel in *capital cases* has no controlling effect upon the question whether *due process* has been observed. Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398.

In keeping with these benevolent and just purposes, the Constitution of Missouri has, since 1820, contained substantially this provision: "That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; * * *". Art. I, Sec. 18(a), 1945 Constitution, V.A.M.S. Since 1825 our statutes have provided in substance that "If any person about to be arraigned upon an indictment for a felony be without counsel to conduct his defense, and be unable to employ any, it shall be the duty of the court to assign him counsel, *at his request*, not exceeding two, who shall have free access to the prisoner at all reasonable hours". Section 545.820 RSMo 1949, V.A.M.S.

These provisions indicate the policy and solicitude of the state when a citizen is charged with a serious criminal offense. They do not mandatorily require the appointment of counsel in all criminal cases and under all circumstances, but they clearly require a fair hearing.

The necessity for a trial court to appoint counsel for an indigent defendant charged with a *capital offense* was considered by our supreme court en banc in Skiba v. Kaiser, 352 Mo. 424, 178 S.W.2d 373. The offense charged in that case was robbery in the first degree by means of a *dangerous and deadly weapon*—the same as in the instant case. The court referred to what is now Sec. 545.820, supra; and held that the defendant had *waived* his right to counsel because he had not *requested* such an appointment. In disposing of the contention that defendant's rights, under the Fourteenth Amendment, had been violated by failure to appoint counsel, it was noted that the defendant was above thirty years of age, and a man of average intelligence. On this ground the court distinguished the case of Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; and relied on Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595.

It may be conceded that the facts in the Powell case were extreme. However, the court made this significant pronouncement (53 S.Ct. 65): "All that it is necessary now to decide, as we do decide, is that in a *capital case,* where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, *whether requested or not,* to assign counsel for him as a necessary requisite of due process of law; * * *". So far as we are advised, this is the first time the Supreme Court of the United States indicated that, under certain circumstances, a state court must appoint counsel for an indigent defendant charged with a capital offense, *whether requested or not*.

In the Skiba v. Kaiser opinion, our court discusses and quotes at length from Betts v. Brady, supra. In the Betts case, the defendant was charged with robbery *which was not a capital* offense under the Maryland statute. The issue the court was called upon to decide is stated thus (62 S.Ct. 1257): "The question we are now to decide

is whether due process of law demands that in *every criminal case,* whatever the circumstances, a state must furnish counsel to an indigent defendant". In an exhaustive opinion, the court reviewed the constitutional and statutory provisions of every state in the union relative to this question, and held, under the facts in that case, that the rights of the defendant, under the Fourteenth Amendment, had not been denied.

█ We agree that the prevailing rule is that a trial court is not required to appoint counsel for an indigent defendant in *every criminal case* and under *every circumstance.* Our constitutional and statutory provisions, quoted supra, make no such requirement. Each case must depend on its own facts.

█ However, the precise question before us is whether the petitioner, who was charged with a *capital offense;* who was only eighteen years of age; a victim of a broken home; who was a stranger in Barton County without friends or relatives there; who entered a plea of guilty to such charge without being advised by the court that he was entitled to the appointment of counsel or without the court offering to appoint counsel or advising him of the possible consequences of a guilty plea; may be denied his rights under the Fourteenth Amendment merely because he did not know he was entitled to have counsel, and did not *request* such an appointment.

The answer to this question seems to have been given by our supreme court in State v. Mischanko, 272 S.W.2d 210, 214 (decided in 1954), wherein it is said:

"Beginning with Powell v. State of Alabama, supra, and as reaffirmed in the course of its subsequent decisions, the Supreme Court of the United States has apparently taken the definite stand that in all *capital cases* tried in a state court, counsel must be assigned for an indigent defendant *whether requested or not,* and that

failure to assign counsel to assist a defendant charged with a *capital offense,* or to give a fair opportunity to a defendant's counsel to assist him in his defense, is a denial of due process under the Fourteenth Amendment. Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986."

It is true Mischanko was not charged with a capital offense, and the state contends, in this case, that the quoted language is mere obiter dictum. Whether it is or not, we are of the opinion that the quoted doctrine represents the modern view of the Supreme Court of the United States.

It is interesting and enlightening to note that the opinion in Skiba V. Kaiser, supra, was delivered in February, 1944, and in December, 1944, the Supreme Court of the United States reviewed two judgments of the Missouri Supreme Court involving a similar question decided in the Skiba case. The two decisions referred to are Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398, and Tomkins v. State of Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407. In these two cases, the Missouri court had held that the petitions for habeas corpus did not state a good cause of action, and dismissed the petitions. In each case, the petition alleged that the defendant had been charged with a *capital offense;* that defendant entered a plea of guilty as charged without counsel being appointed to represent him; and that he was not capable of making his own defense. In the Williams case, the petition also alleged that the defendant had *requested the aid of counsel.* That allegation is not contained in the petition in the Tomkins case. The court discussed the question at considerable length and held, in each case, that the petitions did state a good cause of action and quoted with approval from Powell v. State of Alabama, supra, as we have done above; that in a *capital case,* where the defendant is unable to employ counsel and is incapable adequately of making his own defense, because of his unfamiliarity with the intricacies of the law and court procedure,

the court must appoint counsel *whether requested or not.*

In the more recent case of Bute v. People of Illinois, supra, the court was considering the application of the Fourteenth Amendment in a *non-capital* case and discussed that subject at considerable length, but in the course of the opinion, stated (68 S.Ct. 781): "On the other hand, this Court repeatedly has held that failure to appoint counsel to assist a defendant or to give a fair opportunity to the defendant's counsel to assist him in his defense where charged with a *capital crime* is a violation of due process of law under the Fourteenth Amendment". Many cases are cited in support of that principle, including Williams v. Kaiser, and Tomkins v. State of Missouri, supra.

In Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647, the court was considering a case where the defendant, a boy of eighteen years of age, had plead guilty to breaking and entering, which was a non-capital offense. The United States District Court had heard evidence and found, among other things, that (68 S.Ct. 1275–1276): "It appears that petitioner, at the time of his trial * * *, was eighteen years old, and though not wholly a stranger to the Court Room, having been convicted of prior offenses, was still an inexperienced youth unfamiliar with Court procedure, and not capable of adequately representing himself". The state court had refused to appoint counsel upon request. In disposing of the matter, the supreme court said: "There are some individuals who, by reason of age, ignorance or mental capacity are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual. Where such incapacity is present, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment * *"; and held "void the judgment and commitment under which petitioner is held. * * *".

The Kansas City Law Review, Vol. 19, page 100 et seq., contains an interesting and informative article reviewing many decisions on this subject and we will not undertake a digest of the many cases discussing the various ramifications of the question. It is apparent that the courts have not, and possibly should not, lay down a hard and fast rule to be applied in every case and under all circumstances. However, we are convinced that, in the instant case, the petitioner was not accorded that fair and just treatment contemplated by the Fourteenth Amendment and by the inherent philosophy of the law of this country which seeks to accord every individual a just and fair hearing, even though he be a derelict. The petitioner may have been guilty of the offense charged, or of a lesser degree of robbery, but that is not the decisive question. He was entitled to counsel who could better determine what action should be taken.

■ From what we have said, it follows that the judgment and sentence of the Circuit Court of Barton County, and the commitment issued thereon, under which the petitioner is held, are illegal and void.

However, this does not mean that petitioner is entitled to his immediate release from prison, because it appears in the record that recently he was convicted of an attempt to escape prison and sentenced to two years' confinement. That judgment and sentence is not called in question and he must serve it according to law. Upon the completion of that confinement, the warden of the penitentiary is directed to surrender the custody of the petitioner to the sheriff of Barton County, Missouri, where he may be proceeded against on the charge of robbery pending in the circuit court of that county, if the authorities so desire.

All concur.